Filed 10/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAYA BAXTER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GENWORTH NORTH AMERICA<br>CORPORATION et al.,<br><br>        Defendants and Appellants. | A144744<br><br>(Contra Costa County<br>Super. Ct. No. MSC14-01627) |

Plaintiff Maya Baxter sued her former employer, defendant Genworth North America Corporation (Genworth), for wrongful termination and related causes of action arising out of her employment. Genworth moved to compel arbitration of the dispute. On appeal from an order denying its motion to compel arbitration, Genworth contends the trial court erred in concluding the arbitration agreement is unconscionable and in refusing to sever any provisions the court considered to be unconscionable. Because we conclude the arbitration agreement is procedurally and substantively unconscionable, we shall affirm the trial court's order.

**FACTUAL AND PROCEDURAL HISTORY**

Baxter began working for defendant AssetMark Investment Services, Inc. (AssetMark) in February 2001. Genworth acquired AssetMark in August 2006. As AssetMark transitioned to Genworth, Baxter became an employee of Genworth. As a condition of her continued employment, Genworth required Baxter to sign a "Conditions of Employment Acknowledgment" form. Baxter signed the acknowledgment, which confirmed her receipt and review of certain printed materials and included her agreement to arbitrate any disputes arising out of her employment. Baxter agreed to resolve

1

employment related disputes according to guidelines set forth in Genworth's alternative dispute resolution program known as the Resolve Employee Issue Resolution Program (Resolve).

The Resolve program sets forth four stages, or "levels," for pursuing dispute resolution. The Resolve program begins with an employer-controlled process before it reaches mediation or arbitration. An employee is required to submit his or her concern in writing to the Resolve administrator. At level one of Resolve, employees are required to discuss their concerns with their immediate manager and a human resources representative. If the concern cannot be resolved at level one, the employee may proceed to level two, which involves a meeting among the employee, a higher-level manager, and a human resources representative in an attempt to resolve the employee's concern. Attorneys are not permitted to participate in levels one and two of Resolve. If the dispute is not resolved at level two, the employee may request mediation (level three) if the dispute arises out of a covered claim, such as claims relating to compensation, involuntary termination, or employment discrimination and harassment. An employee whose dispute is not resolved by mediation at level three may then pursue arbitration at level four.

Baxter alleges she continued to be promoted, get favorable performance evaluations, and receive salary increases during her tenure at Genworth. At some point in 2011, Baxter's role was expanded to include supervisory responsibilities. Baxter alleges she expressed concern about employee evaluation forms that included race, age, and gender coding. Baxter, an African American woman, opposed and protested Genworth's evaluation protocol based upon her good faith belief that evaluating employees on the basis of age, race, and gender was discriminatory and unlawful. She claims she was admonished and subjected to ongoing harassment and retaliation as a result of her concerns about the evaluation protocol. In early 2013, Baxter requested and was granted a medical leave of absence under the California Family Rights Act (CFRA) in order to care for her mother. Baxter was scheduled to return to work in the middle of June 2013.

According to Baxter, Genworth informed her on May 13, 2013, that her CFRA leave was scheduled to expire at the end of May.  She responded that she would return to work in mid-June, as originally scheduled and approved.  Baxter alleges that, within approximately two hours after emailing Genworth about the timing of her return from CFRA leave, Genworth's human resources manager and chief operating officer contacted her to notify her that her position was being eliminated immediately.  According to Baxter, she was told that her position was eliminated due to organizational changes.  She alleges on information and belief that her job was given to a white male counterpart who was not on medical leave.

In August 2014, Baxter filed a complaint for damages against Genworth and AssetMark[1] arising out the termination of her employment.  Based upon the allegations summarized above, Baxter asserted causes of action for associational discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), retaliation in violation of the CFRA (Gov. Code, § 12945.2), retaliation in violation of the FEHA, retaliation in violation of Labor Code section 1102.5, discrimination based upon race in violation of the FEHA, and wrongful termination.  Baxter alleges she timely filed discrimination charges with the Department of Fair Employment and Housing (DFEH) and received a right to sue notice.

Genworth filed a motion to compel arbitration of Baxter's claims after Baxter refused to stipulate to arbitrate her claims pursuant to the Resolve program.  AssetMark joined in Genworth's motion.  Genworth argued that the arbitration agreement meets the minimum fairness requirements established by California law and that Baxter violated the agreement by filing suit.  Baxter opposed the motion.

The trial court denied Genworth's motion to compel arbitration.  The court reasoned that the arbitration agreement is both procedurally and substantively unconscionable.  Because Baxter was required to sign the agreement as a condition of her

---

[1] We will refer to Genworth and AssetMark collectively as Genworth unless the context requires further specificity.

3

continued employment, the court found substantial evidence of "modest procedural unconscionability." The court concluded that a number of features of the arbitration agreement were substantively unconscionable, including default discovery limitations, a prohibition against contacting witnesses, procedural deadlines that effectively shorten the statute of limitations and preclude a meaningful opportunity for a prelitigation FEHA investigation, and accelerated hearing procedures that infringe upon an employee's ability to adequately present his or her case. The court also ruled that severance of the offending provisions was not an option because the arbitration agreement is permeated by unconscionability.

Genworth timely appealed the order denying its motion to compel arbitration.

## DISCUSSION

### I. *Governing legal principles and standard of review*

Arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) "California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) Nevertheless, courts may invalidate an arbitration agreement if it contains provisions that are unconscionable or contrary to public policy. (*Id.* at pp. 113–114; accord, *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 711 (*Fitz*).)

Unconscionability " ' "refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*).)

Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract, although they need not be present in the same degree. (*Baltazar*, *supra*, 62 Cal.4th at p. 1243.) " 'Essentially a sliding scale is invoked which

4

disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

In *Armendariz,* our Supreme Court set forth five minimum requirements that must be met in the employer-employee context to ensure that a mandatory arbitration agreement does not curtail an employee's public rights derived from statutory and common law.[2] (*Fitz, supra*, 118 Cal.App.4th at p. 712; *Armendariz, supra*, 24 Cal.4th at pp. 102, 110–111.) "Arbitration agreements in the employer-employee context must provide for: (1) neutral arbitrators, (2) more than minimal discovery, (3) a written award, (4) all types of relief that would otherwise be available in court, and (5) no additional costs for the employee beyond what the employee would incur if he or she were bringing the claim in court." (*Fitz, supra*, at pp. 712–713.) In order to be enforceable, an arbitration agreement that applies to the resolution of an employee's public rights must not only be conscionable but must also satisfy the five *Armendariz* requirements. (*Id.* at p. 713.)

" 'On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' [Citation.] Thus, unconscionability is a question of law we review de novo. [Citation.] To the extent the trial court's determination on the issue turned on the resolution of contested facts, we would review the court's factual determinations for substantial evidence." (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82; see *JSM Tuscany,*

---

[2] "Public rights are designed to protect the public interest, not just the individual, and therefore cannot be contravened by private agreement." (*Fitz, supra*, 118 Cal.App.4th at p. 712.) Public rights affect " ' "society at large" ' " and include FEHA discrimination claims. (*Id.* at p. 711.)

5

*LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1235; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468–1469.)  Because the essential facts are undisputed in this case, we consider anew whether the arbitration agreement is procedurally and substantively unconscionable.

In assessing whether the trial court erred in declining to sever any unconscionable provisions and enforce the remainder of the arbitration agreement, we will not reverse the trial court's severance decision unless an abuse of discretion is shown.  (See *Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th at p. 83.)

## II.     *Procedural unconscionability*

Procedural unconscionability focuses on " ' "oppression" ' " or " ' "surprise" ' " due to unequal bargaining power.  (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion.  [Citation.]  'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 113.)  "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Id.* at p. 115.)  "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." (*Flores v. Transamerica HomeFirst, Inc.*, *supra*, 93 Cal.App.4th at p. 853.)

Here, Baxter had no opportunity to negotiate the terms of the Resolve program. Nor did she have any meaningful choice in the matter.  She could either quit her job of

over five years or agree to the arbitration terms that were a condition of her continued employment. The Resolve program was presented in a take-it or leave-it manner. Baxter lacked equal bargaining power. These facts present a "high degree of oppressiveness" supporting a finding of procedural unconscionability. (See *Fitz*, *supra*, 118 Cal.App.4th at p. 722.)

Genworth nonetheless contends the arbitration agreement is not procedurally unconscionable. The argument is unpersuasive. It claims numerous California decisions have held that arbitration agreements are not rendered unenforceable simply because they are offered on a take-it or leave-it basis to an employee. To support its argument, Genworth cites cases in which adhesive arbitration agreements were enforced because they were not *substantively* unconscionable. (See, e.g., *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075–1076 [adhesive arbitration agreement enforceable because substantively unconscionable provision could be severed].) The cases relied upon by Genworth are not at odds with the general rule that the existence of contract of adhesion supports a finding of procedural conscionability. Rather, the cases simply apply the principle that a court may not refuse to enforce an arbitration agreement unless it is *both* procedurally and substantively unconscionable. (See *Baltazar*, *supra*, 62 Cal.4th at p. 1243.)

Genworth also purports to rely upon the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 for the proposition that procedural unconscionability is not established simply because a party has no choice but to accept a non-negotiable arbitration agreement. We do not agree with Genworth's characterization of *Concepcion*. In that case, the court held that federal law preempted California's rule against waiver of class action remedies in consumer arbitration agreements. (*Id.* at pp. 339–352.) The *Concepcion* decision mentions adhesion contracts, but not in the context of procedural unconscionability. The court acknowledged that California's rule against class action waivers was limited to adhesion contracts but then observed that the limitation was meaningless because "the times in which consumer contracts were anything other than adhesive are long past." (*Id.* at

7

pp. 346–347.)  The court had no occasion to consider whether a contract of adhesion would support a finding of procedural unconscionability under California law. Accordingly, *Concepcion* has no bearing on the analysis of procedural unconscionability.

We conclude the trial court did not err in finding that the arbitration agreement is procedurally unconscionable.

## III.    *Substantive unconscionability*

The substantive element of the unconscionability analysis focuses on overly harsh or one-sided results.  (*Little v. Auto Stiegler*, *supra*, 29 Cal.4th at p. 1071.)  "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided' [citation].  All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]."[3]  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145.)

### A.    Discovery

#### 1.    *Prohibition on contacting other employees*

The Resolve guidelines prohibit employees and their attorneys from obtaining information outside the formal discovery process.  The prohibition applies to the company's proprietary documents but also extends to attempts to question another employee about the aggrieved employee's claim.  The guidelines specify that "[a]ny employee who is questioned by another employee or by someone else on behalf of another employee concerning another employee's claim, shall not respond to such

---

[3] The California Supreme Court has emphasized that, although some courts have used the phrase "shock the conscience" to describe the degree of one-sidedness required to establish substantive unconscionability, "an examination of the case law does not indicate that 'shock the conscience' is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others."  (*Sonic-Calabasas A, Inc. v. Moreno*, *supra*, 57 Cal.4th at p. 1159.)

questioning or provide information or documents to such individual but should direct the inquiring individual to the Company counsel so that information may be provided through the discovery process." No such prohibition on contacting other employees to discuss a complaining employee's claim applies to Genworth. Indeed, in the section of the Resolve guidelines concerning mediation confidentiality, the guidelines clarify that nothing "shall restrict the Company's ability . . . to interview witnesses and gather information to evaluate the employee's claims."

The trial court concluded that this one-sided prohibition against communicating with coemployees is "grossly unfair to the employee and has serious public policy implications." The court noted that a complaining employee who was prohibited from contacting coemployees would be left to gamble as to which potential witnesses to depose within the limits set by the arbitration agreement, whereas the employer would have unfettered access to its employees and could cherry pick the witnesses it might choose to depose.

Genworth complains the trial court took the prohibition out of context. It claims that the provision, when read in context, simply bars a complaining employee from "obtaining information, particularly the Company's proprietary information, outside of the supervised, formal discovery process." It also contends the prohibition is no different from the limitation the law already places on any litigant from pursuing self-help outside the formal discovery process.[4]

We do not agree with Genworth's characterization of the prohibition against informal discovery as being limited to its proprietary documents or information. The

---

[4] At oral argument on appeal, counsel for Genworth offered an additional justification for the prohibition. Counsel stated it would be disruptive to the workplace to allow an employee to question other employees about a dispute or claim. We are not persuaded this rationale justifies the prohibition, particularly in light of public policy concerns discussed below. Maintaining order and limiting distractions in the workplace is undoubtedly a legitimate goal. But the prohibition against communicating with coworkers is not narrowly tailored to achieve that purpose. Indeed, it applies even outside the workplace.

9

prohibition forbids questioning of coemployees about the substance of an employee's claim. While the Resolve guidelines emphasize that employees shall not "directly or indirectly attempt to obtain copies of the Company's proprietary documents" except through formal discovery, the prohibition against communicating with employees is not limited to the solicitation of proprietary information or documents. This provision of the Resolve guidelines effectively acts as a gag order that limits a complaining employee's ability to informally investigate a claim. As the trial court observed, without the ability to conduct such an informal investigation, an employee will be hampered in his or her ability to effectively tailor the limited discovery allowed under the arbitration agreement. Because the same prohibition does not apply to Genworth, the arbitration agreement is unfairly one-sided.

The prohibition also raises public policy concerns because it effectively threatens employees who choose to voluntarily cooperate with an employee who complains about unlawful discrimination. Under both federal and California law, an employer may not discriminate against an employee who testifies on behalf of another employee or who otherwise assists the complaining employee in connection with a complaint of unlawful discrimination. (See Gov. Code, § 12940, subd. (h); 42 U.S.C. § 2000e-3, subd. (a).) The Resolve guidelines violate this public policy by forbidding employees from assisting each other with claims of discrimination except within the confines of the limited formal discovery allowed under the arbitration agreement.

Further, the prohibition against contacting other employees is not necessarily consistent with limitations the law already places on seeking self-help outside the formal discovery process, as Genworth claims. As support for its assertion, Genworth relies on a case that disapproves of any litigant or potential litigant who "converts, interdicts or otherwise purloins *documents* in the pursuit of litigation outside the legal process . . . ." (*Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279, 1289, italics added.) The decision is limited in scope to a party's attempts to obtain another party's proprietary documents outside the formal discovery process. The court's analysis is premised upon the notion that taking or removing tangible property belonging to another

10

party constitutes conversion and violates personal property rights, irrespective of whether the documents or other property might otherwise be subject to formal discovery. (*Id.* at p. 1288.) This principle does not apply to information that may be sought from a coworker relating to a discrimination or harassment claim, as long as the employee or other person conducting an informal investigation does not seek the employer's proprietary documents or information that is confidential, privileged, or otherwise protected from disclosure. Consequently, we do not agree that the Resolve prohibition against communicating with employees is simply consistent with limitations on informal discovery that apply in all cases.

Genworth fails to identify any law or legal principle that forbids an employee from answering a coworker's inquiry about a harassment or discrimination claim. It also fails to cite to any case law supporting the proposition that such a prohibition is valid under California law. We conclude that the prohibition against communicating with other employees is unfairly one-sided and therefore a substantively unconscionable provision.

### 2. *Default limitations on discovery*

"Adequate discovery is indispensable for the vindication of statutory claims." (*Fitz*, *supra*, 118 Cal.App.4th at p. 715.) " '[A]dequate' discovery does not mean unfettered discovery . . . ." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184 (*Mercuro*).) Although parties to an arbitration agreement may agree to limitations on discovery that is otherwise available under the Code of Civil Procedure, an arbitration agreement must nonetheless " 'ensure minimum standards of fairness' so employees can vindicate their public rights." (*Fitz*, at p. 716.)

The Resolve guidelines set default limitations on discovery that may be conducted in preparation for arbitration. An employee is entitled to receive documents from his or her personnel and medical files. In addition, each party may submit up to ten interrogatories to another party (with each subpart counting as a separate interrogatory), propound five written requests for documents, and depose two individuals for a total of no more than eight hours. The Resolve guidelines give the arbitrator authority to increase the number of depositions, interrogatories, and requests for production "for good and

11

sufficient cause shown" in order "to ensure that a party has a fair opportunity to present a case . . . ."

Genworth argues the trial court erred in concluding that these discovery provisions are unconscionable. According to Genworth, if the default discovery limits are inadequate in a particular case, the arbitrator has ample authority to expand discovery as necessary to ensure a fair arbitration. And it takes issue with the "speculation" that an arbitrator may deny adequate discovery in a particular case. Genworth cites the principle that the court must assume an arbitrator will act in a reasonable manner in conformity with the law. (See *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 984.)

Employment disputes are factually complex, and their outcomes "are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice." (*Fitz*, *supra*, 118 Cal.App.4th at p. 717.) Seemingly neutral limitations on discovery in employment disputes may be non-mutual in effect. " 'This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses.' " (*Id.* at p. 716.)

In this factually complex case involving an employee who had a 12-year employment history at Genworth and AssetMark, the outcome will depend upon several percipient witnesses, at least six of whom are identified by name in the complaint. Relevant documents include those relating to family leave practices, evaluation policies, reorganization, prior complaints similar to Baxter's, communications concerning Baxter's discipline and termination, and Genworth's internal investigation, among others. The default limitations on discovery are almost certainly inadequate to permit Baxter to fairly pursue her claims.

In *Fitz*, *supra*, 118 Cal.App.4th 702, the court held that similar discovery limits were unconscionable and violated the minimum requirements of *Armendariz*. The arbitration agreement in *Fitz* allowed two depositions in addition to expert depositions, with no time limit established for the length of the depositions. (*Id.* at p. 709.) The agreement required an exchange of exhibits but did not otherwise expressly authorize

written discovery demands. (*Ibid.*) "No other discovery [was] allowed unless the arbitrator [found] a compelling need to allow it. The policy require[d] the arbitrator to limit discovery as specified in the agreement unless the parties [could] demonstrate that a fair hearing would be *impossible* without additional discovery." (*Id.* at p. 716.) In concluding that the arbitration agreement did not allow for adequate discovery, the *Fitz* court focused on the fact the agreement allowed for only two depositions of percipient witnesses, a number that would be sufficient only in an "unusual" employment dispute. (*Id.* at p. 717.) Granting the arbitrator discretion to allow additional discovery was an "inadequate safety valve" in light of the "impossibility" standard that had to be met to justify more discovery. (*Ibid.*) According to the court, "the burden the [arbitration agreement] imposes on the requesting party is so high and the amount of discovery the [agreement] permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery." (*Id.* at pp. 717–718, fn. omitted.)

Genworth contends that discovery provisions substantially similar to those in the Resolve guidelines have been upheld. Genworth relies on *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 404–406 (*Sanchez*), in which the court concluded that an arbitration agreement that limited discovery to three depositions and 20 interrogatories was not unconscionable as a matter of law. The agreement in *Sanchez* allowed for additional discovery upon a showing of " 'substantial need.' " (*Id.* at p. 404.) The *Sanchez* court emphasized that the standard for additional discovery was lower than the " 'compelling' " need required to be shown in *Fitz.* (*Id.* at p. 405.) Genworth also cites *Mercuro*, *supra*, 96 Cal.App.4th at page 184, in which the court was "unable to say" that an arbitration agreement that allowed three depositions and a total of 30 discovery requests was unconscionable. The agreement in *Mercuro* gave the arbitration discretion to allow additional discovery upon a showing of " 'good cause.' " (*Id.* at p. 182.)

13

*Sanchez* and *Mercuro* are distinguishable.  In those cases*,* the employees failed to establish as a factual matter that the discovery provisions were inadequate to vindicate their statutory rights.  (See *Sanchez*, *supra*, 224 Cal.App.4th at pp. 404–405; *Mercuro*, *supra*, 96 Cal.App.4th at p. 183.)  In *Sanchez,* the employee failed to offer any showing that the default levels of discovery would be inadequate.  (*Sanchez*, at p. 405.)  And, although the court in *Mercuro* conceded the employee's concern over the discovery provisions was not unreasonable, it was not prepared to say he was prevented from vindicating his statutory rights "without evidence" of how the provisions might be applied in practice.  (*Mercuro*, at p. 183.)  Thus, it was not sufficient simply to claim that the discovery limitations were unconscionable in the abstract.  It was necessary to make a factual showing that the discovery limitations would as a practical matter thwart the employee's ability to prove his or her particular claims.

Here, unlike in *Sanchez* and *Mercuro,* Baxter set forth facts tending to show that the default levels of discovery would be inadequate to vindicate her statutory rights.  (See *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 513 [employee estimated need to take at least 15 to 20 depositions but agreement limited employee to one deposition and placed "quite high" burden for additional discovery].)  She estimated she would need to depose an estimated six to ten witnesses, six of whom are already identified in her complaint.  Further, she predicted she would need to depose persons Genworth would designate as most knowledgeable on a variety of topics depending upon the defenses Genworth may assert.  As far as we are aware, Genworth did not dispute these estimates of the number of depositions required.

In addition*,* while the "good and sufficient cause" standard for additional discovery in the Resolve guidelines is not as onerous as a "compelling need" standard in *Fitz,* it still presents a more stringent standard than a simple "showing of need," a standard the court concluded did not impose an unreasonable limitation on the arbitrator's authority to increase discovery in *Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at pages 978 and 984.  Moreover, the "good *and* sufficient cause" standard is vague.  (Italics added.)  Presumably, it is not enough merely to show "good cause" for additional

14

discovery. Otherwise, the term "sufficient" would be rendered meaningless. In applying the Resolve guidelines and assessing whether a "sufficient" showing has been made to justify additional discovery, an arbitrator might expect a showing beyond simple "good cause," particularly if the employee seeks discovery well beyond the default limitations.

In sum, the default discovery allowed under the Resolve program is low, the burden placed on Baxter to justify additional discovery is somewhat greater than a simple showing of need or good cause, and Baxter has established as a factual matter that she will likely need to conduct at least three to five times the number of depositions allowed under the Resolve guidelines. While we agree with Genworth that we must assume an arbitrator will act in a reasonable manner, a reasonable arbitrator would feel constrained under the terms of the Resolve program to expand discovery to the extent necessary to vindicate Baxter's statutory rights. Under the circumstances, it is reasonable to conclude that her ability to prove her claims would be frustrated. Accordingly, we agree with the trial court's conclusion that the provisions in the Resolve program limiting discovery tend to be substantively unconscionable.[5]

---

[5] We acknowledge the question of whether a particular provision is substantively unconscionable is not always answered with an unequivocal yes or no. In the case of the Resolve program's default discovery limitations, the provision falls somewhere on the unconscionable side of the spectrum between a valid, enforceable provision and one that is unequivocally unconscionable. But even if we were to conclude that this particular provision is not substantively unconscionable, our disposition would remain the same in light of the provisions other than this one that are also substantively unconscionable.

15

## C.    Statute of limitations

A FEHA administrative claim must be filed within one year of the employer's discriminatory act, and a lawsuit alleging FEHA claims must be filed in court within one year of the date the DFEH, the administrative agency charged with investigating the claim, issues a "right-to-sue" letter.  (Gov. Code, §§ 12960, subd. (d), 12965, subd. (b).)  Factoring in the time required for the DFEH to investigate and respond to the claim, as a practical matter the outside limit to sue under the FEHA may be as long as three years.  (*Ellis v. U.S. Security Associates* (2014) 224 Cal.App.4th 1213, 1225 (*Ellis*).)

The Resolve program requires an employee to initiate a claim within the "applicable statute[] of limitations."  In the case of claim that requires the filing of a charge with an administrative agency before a court action may be instituted, the Resolve guidelines define the "applicable statute of limitations" as the administrative agency filing deadline.  Thus, the "applicable statute of limitations" for a FEHA claim under the Resolve guidelines is one year, which is the limitations period for filing a FEHA administrative claim.  (Gov. Code, § 12960, subd. (d).)

After a claim is initiated at level one of Resolve, an employee must meet certain deadlines before the claim may proceed to the next level.  A level two claim must be submitted within 15 business days of the date of Genworth's written response at level one.  A level three demand for mediation must be submitted within 30 calendar days of the date of Genworth's written response at level two.  And a level four arbitration demand must be submitted within 30 calendar days of the date of Genworth's written response at level three.

While parties to an arbitration agreement may agree to shorten the applicable limitations period for bringing an action, a shortened limitations period must be reasonable.  (*Ellis*, *supra*, 224 Cal.App.4th at p. 1222.)  " 'A contractual period of limitation is reasonable if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained.' "  (*Id.* at p. 1223.)  As we explain, shortening the limitations period to pursue relief for FEHA

16

statutory claims under Resolve to one year—the time required to file an administrative FEHA claim—is unreasonable.

In *Ellis*, *supra*, 224 Cal.App.4th at page 1225, the Court of Appeal held that an arbitration agreement establishing a six-month limitations period for statutory FEHA claims was unconscionable. (Accord, *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117–118.) The court pointed out that employment discrimination claims are already subject to shortened statutes of limitation. (*Ellis*, at p. 1223.) Cutting the limitations period to six months "seriously truncates the time" to vindicate statutory rights under the FEHA, thus "drastically reducing the time to sue allowed by FEHA by as much as five-sixths." (*Id.* at p. 1225.) According to the *Ellis* court, six months did not provide sufficient time to pursue legal remedies and violated the public policy embodied in Government Code section 12920, which establishes the statutory time period the Legislature has impliedly determined will allow for an aggrieved party to vindicate his or her statutory rights. (*Ellis*, at p. 1225.)

Genworth contends Resolve does not shorten the statute of limitations. We disagree. The practical effect of the Resolve guidelines is to shorten the period that would otherwise apply to file an action in court. Whereas an aggrieved party would ordinarily have up to three years to file a FEHA action in court (depending upon how quickly the prerequisite administrative claim is handled), under Resolve an aggrieved party has only one year to initiate a complaint. Moreover, an employee must submit to arbitration under the Resolve guidelines within 30 days of Genworth's written notice regarding the outcome of mediation even if a FEHA investigation has not yet been concluded or if the statute of limitations to file a FEHA lawsuit has not yet run. Indeed, given the fast pace at which a claim progresses through the various levels of Resolve, it is conceivable that an employee who promptly initiates an informal complaint through

Resolve would be required to file a formal arbitration demand before the one-year statute of limitations has run even on the filing of a FEHA administrative complaint.[6]

Although the Resolve guidelines allow an aggrieved party to initiate a FEHA claim within one year, instead of the six months that the *Ellis* court found inadequate, the shortened limitations period is nonetheless insufficient for the reasons explained in *Ellis*. (*Ellis*, *supra*, 224 Cal.App.4th at pp. 1223–1127.) Reducing the time to pursue a claim by as much as two-thirds does not provide sufficient time to vindicate an employee's statutory rights under the FEHA.

We observe that the arbitrator has authority under Resolve to extend deadlines for good cause. However, Genworth cannot rely on that provision to excuse an otherwise substantively unconscionable limitations provision in the Resolve guidelines. A provision delegating authority to the arbitrator to resolve question of unconscionability is itself unconscionable. (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 254.) This principle extends to situations in which an arbitrator is purportedly given authority to enforce a longer limitations period when the period specified in the arbitration agreement is illegal or unconscionable. (*Ibid.*)

Accordingly, we conclude the shortened limitations period in Resolve is insufficient to protect an employee's right to vindicate his or her statutory rights and is therefore substantively unconscionable.

---

[6] Wholly apart from concerns about statutes of limitation, Baxter complains about the internal deadlines she must adhere to at each level of the Resolve program after a claim is initiated. She contends the short deadlines creates traps for the unwary. We are aware of no authority supporting her contention that internal deadlines within an alternative dispute resolution procedure are necessarily unconscionable. The Resolve guidelines clarify that the various internal deadlines may be excused for good cause and are distinct from statutes of limitation in that they are not a jurisdictional bar to proceeding with a claim. Accordingly, we are not convinced the various internal deadlines in Resolve are substantively unconscionable, except to the extent they may have the effect in certain cases of requiring an aggrieved party to seek formal arbitration well before the applicable statute of limitations to file suit has run.

**D. Administrative remedies under the FEHA**

The trial court concluded that the Resolve program limits an employee's right to pursue administrative remedies under the FEHA as a practical consequence of the 30-day deadline for seeking arbitration at level four after a mediation is unsuccessful at level three. A right-to-sue letter is a prerequisite to pursuing statutory FEHA claims, which are subject to dismissal unless an employee has exhausted administrative remedies and secured such a letter. (See *Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637, 644; *Ellis, supra,* 224 Cal.App.4th at p. 1229.) According to the court, an employee faced with the 30-day deadline after an unsuccessful mediation would be forced to "forego a FEHA investigation and instead seek an immediate 'right to sue' letter" in order to avoid forfeiting the right to arbitrate.[7] The court reasoned that the employee would be coerced to waive his or her statutory right to a FEHA investigation, rendering the Resolve program unconscionable for a separate and distinct reason.

Genworth claims the trial court misread the Resolve guidelines, which expressly permit employees to pursue administrative remedies. Genworth relies upon a provision in the Resolve guidelines clarifying that they are not intended "to discourage or interfere with the legally protected rights of employees to file administrative claims or charges with government agencies." It also cites a discussion in the Resolve handbook specifying that the program does not "prevent employees from seeking the assistance of any government agency . . . ." In that same discussion, the Resolve handbook notes that Genworth and the employee "may jointly ask the agency to defer processing the charge so that the Resolve process may be utilized."

If our analysis were limited to the specific language in Resolve cited by Genworth, we would tend to agree with the trial court's conclusion that the program's timelines might force employees to waive their right to an administrative investigation in order to secure an immediate right-to-sue letter. After all, Genworth did not cite any language in

---

[7] An employee may choose to waive a FEHA investigation and ask for an immediate right-to-sue letter. (*Ellis*, *supra*, 224 Cal.App.4th at p. 1221, fn. 5.)

19

the Resolve guidelines that waives the requirement of exhaustion of administrative remedies or the issuance of a right-to-sue letter as a prerequisite to seeking relief for certain statutory claims. Simply declaring that the Resolve guidelines are not intended to interfere with an employee's rights to pursue administrative claims does not change the practical effect of the shortened limitations period. Nor is the problem resolved by agreeing to defer the administrative agency's processing of the charge, because that necessarily defers the issuance of a right-to-sue letter that is a prerequisite to seeking relief. Being allowed to pursue administrative remedies after the conclusion of the arbitration is a hollow right if the employee is barred from pursuing statutory FEHA claims in the arbitration itself due to the failure to exhaust administrative remedies.

Nevertheless, in a section of the Resolve handbook that includes answers to common questions about the program, there is support for the notion that Genworth has agreed to waive the issuance of a right-to-sue letter as a prerequisite to pursuing statutory FEHA claims. Specifically, in response to a question about whether Resolve prevents an employee from seeking administrative remedies, the Resolve handbook states: "It is not necessary for an employee to have filed a charge of discrimination with . . . a state agency in order to take a discrimination claim through all four levels of the Resolve process . . . ."[8] While we are not aware of anything in the Resolve guidelines themselves that expressly permits an employee to assert statutory claims in an arbitration without exhausting administrative remedies, this "answer" that appears in a question-and-answer section of the Resolve program handbook appears to acknowledge that employees may pursue statutory claims in an arbitration without even filing an administrative claim, much less exhausting administrative remedies. Consequently, we agree with Genworth that the trial court erred in concluding that employees would be forced to waive an administrative investigation in order to have their statutory FEHA claims heard in an arbitration. Under the terms of the Resolve program, an employee may pursue statutory

---

[8] The quoted language appears in a version of Resolve that was updated in 2011.

20

FEHA claims in an arbitration as well as administrative remedies with the DFEH, even if the administrative investigation is not concluded until after the arbitration.

Even though an employee is not precluded from pursuing an administrative investigation after an arbitration conducted pursuant to Resolve, it is nonetheless problematic to require the employee to arbitrate statutory FEHA claims before an administrative investigation can be conducted by the DFEH.  As explained in *Ellis,* the involvement of the DFEH serves an important function.  (See *Ellis*, *supra*, 224 Cal.App.4th at p. 1226.)  The DFEH filing " 'may be helpful . . . because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise.' " (*Ibid.*)  The DFEH must conduct an investigation if a complaint alleges facts sufficient to constitute a violation of the FEHA.  (Gov. Code, § 12963.)  And, the DFEH may choose to file its own civil action against the employer.  (Gov. Code, § 12965, subd. (a).)

The *Ellis* court concluded that a provision that "effectively eliminates any meaningful participation by the DFEH" is unreasonable.  (*Ellis*, *supra*, 224 Cal.App.4th at p. 1226.)  While Resolve allows an employee to pursue a claim with the DFEH after an arbitration concludes, the question remains whether the DFEH's participation is as meaningful after the parties have already arbitrated their statutory FEHA claims.  The filing of an administrative complaint with the DFEH may provide the employee with a preview of the employer's defenses and may give the employee the benefit of investigative efforts conducted by the DFEH.  In light of these potential benefits of pursuing an administrative claim, it is in the employee's interest to have the DFEH participate in a claim before the employee has to litigate statutory FEHA claims in an arbitration.  Yet, Resolve does not guarantee that an employee will be able to pursue administrative remedies before an arbitration is conducted.  Indeed, Resolve actually encourages the parties to defer an administrative investigation until after an arbitration is concluded.

Accordingly, while we agree with Genworth that Resolve does not preclude an employee from pursuing administrative remedies, we nonetheless conclude that Resolve

21

may deprive an employee of his or her right to have an administrative investigation conducted *before* the employee is required to pursue statutory FEHA claims in an arbitration. Because the administrative claim process may be beneficial to the employee in pursuing claims against an employer, provisions in Resolve that have the effect of dispensing with that process before a statutory FEHA claim must be arbitrated establish at least a moderate degree of substantive unconscionability.

### E.    Default timelines for concluding arbitration

The Resolve guidelines specify that the arbitration must commence within 120 calendar days after an arbitrator is appointed unless "good cause" is shown for an extension or the parties otherwise agree to a later commencement. The arbitrator "shall seek to limit the length of the arbitration hearing to two 8-hour days (16 hours total); provided, however, that the arbitration shall have the authority to extend the length of a hearing as necessary."

The trial court concluded these timelines for commencing and completing an arbitration are unconscionable. It reasoned that the time pressure created by the 120-day timeline is exacerbated by timelines for disclosing witnesses, completing discovery requests, and completing the arbitration itself in under 16 hours. The court concluded that "[f]ew successful employment litigation attorneys will be in a position to suddenly put their practice on hold so as to accommodate this 'rocket docket' hearing procedure." Further, the court found it was unfair to place the burden on the employee to show good cause for extending the timelines.

There is nothing inherently unconscionable about setting a time limit by which an arbitration hearing must be held or limiting the length of such a hearing. Indeed, the very purpose of arbitration is to streamline the proceedings and obtain an expeditious resolution of disputes. (See *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 704.) The timelines set by the Resolve guidelines for concluding an arbitration, while short, are not per se unconscionable.

Nevertheless, we tend to agree with the trial court's assessment that the Resolve arbitration timelines would prove to be unreasonably short in a more complex

22

employment dispute such as this one. But we part ways with the trial court on the question of whether the Resolve guidelines provide a sufficient safety valve to permit the arbitrator to extend the timelines as necessary. In addressing whether the arbitrator has sufficient discretion to extend timelines, both Baxter and the trial court rely upon *Fitz*, *supra*, 118 Cal.App.4th at page 717, in which the arbitrator's discretion to depart from default discovery limits was limited unless there was a "compelling need" for additional discovery and a fair hearing was "impossible" without such relief. Here, however, the arbitrator has discretion to extend the timelines merely upon a showing of good cause. Presuming, as we must, that the arbitrator will act reasonably in conformity with the law (see *Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at p. 984), we cannot say an arbitrator would feel compelled to deny a reasonable request to extend the Resolve arbitration timelines in a complex employment dispute. While the short default arbitration timelines give some cause for concern, we are not convinced they create more than a modest degree of unconscionability in light of the arbitrator's discretion to extend them.

### F. Other concerns

Baxter raises two additional concerns about the Resolve program that the trial court did not rely upon in its ruling. First, Baxter complains that the Resolve program gives Genworth an unfair early look at her evidence by requiring her to participate in an informal, company-controlled dispute resolution process. Second, she argues that a $50 initiation fee is substantively unconscionable. As we explain, these concerns are unfounded.

As support for her claim that Resolve gives Genworth an unfair preview of her evidence, Baxter relies upon *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, and *Pokorny v. Quixtar, Inc.* (9th Cir. 2010) 601 F.3d 987. In those cases, the arbitration agreement did not provide for a mediation conducted by a neutral third party mediator as a condition precedent to arbitration but, instead, required mediation to be conducted through the employer's internal processes. (*Nyulassy v. Lockheed Martin Corp.*, at p. 1282; *Pokorny v. Quixtar, Inc.*, at p. 999.) In addition, in both cases the

23

obligation to pursue informal dispute procedures was not mutual but applied to the employee only. (*Ibid.*) Here, by contrast, the requirement to pursue informal dispute resolution procedures is mutual and applies to Genworth as well as its employees. Further, the Resolve guidelines expressly provide for a neutral third party mediator who is mutually selected by both parties. Consequently, the cases relied upon by Baxter do not support her unconscionability claim.

Baxter argues that the $50 initiation fee is an unfair charge for the privilege of bringing a complaint and constitutes a cost the employee would not have to incur in court, even though she seems to acknowledge the fee is less than the fee required to file an action in court. We note that Baxter did not raise this theory in the trial court and has consequently forfeited the issue on appeal. (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681.) In any event, the claim fails on the merits. Employees may be required to pay the "usual costs" incurred during litigation. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110–111.) Aside from the modest $50 initiation fee, an employee is not required to pay for any other costs associated with arbitration. Those costs, including administrative and filing fees, the arbitrator's fee, and charges incurred in renting a hearing room, are borne solely by Genworth. Further, the initiation fee is substantially lower than the "usual costs" Baxter would have to incur as filing fees if she pursued a civil action in state or federal court, and Baxter has made no claim that she cannot afford the fee. (See *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920–921 [filing fees not unconscionable absent showing that they are unaffordable or would have substantial deterrent effect].)

Even though we reject Baxter's claims that the Resolve guidelines impose an unconscionable initiation fee and unfairly give Genworth a preview of an employee's evidence, we nonetheless conclude the Resolve guidelines are unconscionable and therefore unenforceable. As a contract of adhesion that Baxter was forced to accept as a condition of her continued employment, Resolve is procedurally unconscionable. And, the provisions in Resolve that prohibit contacting other employees about a claim, restrict formal discovery, shorten limitations periods, and effectively limit an employee's right to

seek administrative remedies before an arbitration is conducted provide more than ample grounds to support a conclusion that Resolve is substantively unconscionable.

## IV.    *Severance*

As a final matter, Genworth contends the trial court abused its discretion in declining to sever any provisions of the Resolve program that it found unconscionable. We disagree.

In *Armendariz,* the Supreme Court concluded the arbitration agreement at issue there could not be enforced because it was "permeated by an unlawful purpose" and could not be saved by merely removing or restricting its unconscionable provisions. (*Armendariz*, *supra*, 24 Cal.4th at pp. 124–125.)  Here, as in *Armendariz,* two factors weigh against severance.

"First, the arbitration agreement contains more than one unlawful provision . . . .  Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.)  The Resolve program contains more than one substantively unconscionable provision, including the prohibition against talking with coworkers about a claim, limits on discovery, and shortened limitations periods for pursuing a claim.

"Second, . . . there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz*, *supra*, 24 Cal.4th at pp. 124–125.)  In this case, it would not be sufficient simply to strike certain terms.  The trial court would have had to rewrite the unconscionable provisions in order to ensure mutuality and fairness.  The court lacked the power to do so.  (*Id.* at p. 125 [court lacks power to cure unconscionability through reformation by augmentation].)  Accordingly, the court did not abuse its discretion in declining to sever the unconscionable provisions.

**DISPOSITION**

The order denying Genworth's motion to compel arbitration is affirmed. Respondent shall be entitled to recover its costs on appeal.

25

_____
McGuiness, P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.


A144744

Maya Baxter v. Genworth North America Corporation et al.

(A144744)

Trial court:          Contra Costa County

Trial Judge:          Hon. Joyce Cram

Attorneys:            Winston & Strawn, Marcus A. Torrano, Olivia N. Tran, Linda T.
                      Coberly for Defendants and Appellants.

                      The Dolan Law Firm, Christopher B. Dolan, Emile A. Davis,
                      Menaka N. Fernando for Plaintiff and Respondent.