Filed 10/31/23  Hutcheson v. UBS Financial Services CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREW HUTCHESON,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>UBS FINANCIAL SERVICES, INC.,<br><br>     Defendant and Appellant. | A166376<br><br>(Alameda County<br>Super. Ct. No. RG18894787) |

Defendant UBS Financial Services, Inc. (UBS) appeals from an order denying its motion to compel arbitration of claims brought by plaintiff Andrew Hutcheson under the Labor Code Private Attorneys General Act of 2004 (Lab. Code,[1] § 2698 et seq. (PAGA)).

UBS moved to compel arbitration several years into the case, but less than two weeks after the United States Supreme Court issued its opinion in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __ [142 S.Ct. 1906] (*Viking River*).  The trial court concluded that UBS had waived its right to compel arbitration, and did not reach other arguments that Hutcheson raised in opposition to the motion.  Although we conclude that as a matter of law UBS did not waive its right to arbitration, we will affirm on the alternative ground that Hutcheson has shown that the arbitration agreement is

---

[1] Statutory references are to the Labor Code unless otherwise stated.

1

unenforceable as unconscionable because of the limitations it imposes on discovery as to his PAGA claim.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Terms of the Arbitration Agreements*

Andrew Hutcheson and Larry Van Steenhuyse were employed by UBS as financial advisors, and during the course of their employment they executed contracts with UBS that contained substantively identical arbitration agreements.

The arbitration agreements state that they were to be "governed by and interpreted in accordance with the Federal Arbitration Act ('FAA' [9 U.S.C. § 1 et seq.])." The agreements provide that "Covered Claims," defined as "any and all claims or disputes" between the employee and UBS, including claims and disputes arising from or related to "employment, compensation, benefits and terms and conditions of employment," would be resolved by arbitration under the rules established by the Financial Industry Regulatory Authority (FINRA).[2] The agreements also include a section entitled "Waivers," which provides that, "To the maximum extent permitted by applicable law, [the parties] agree that no Covered Claims may be initiated, maintained, heard, or determined on a class action basis, collective action basis, or representative action basis either in court or in arbitration."

The agreements also include a paragraph stating that if any contract provisions were "determined to be legally unenforceable or void," those provisions "may be severed from the remaining provisions as appropriate, to

---

[2] Certain claims are excluded from the scope of the arbitration agreement, and the agreements permit employees to elect to arbitrate "discrimination claims . . . (including claims of harassment and retaliation . . . )" before JAMS under the JAMS arbitration rules; those provisions do not apply to the claims at issue here.

2

the extent permitted by law," except that if the waiver of class, collective action and representative claims was "determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim . . . shall proceed in court." The paragraph concludes, "Insofar as any Covered Claim is permitted to proceed on a class, collective or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration."

B.  *Proceedings through April 2022*

This case began in February 2018, when Van Steenhuyse filed a complaint alleging a single cause of action for civil penalties under PAGA, which authorizes an "aggrieved employee" to file a civil action against a former employer "on behalf of himself or herself and other current or former employees" to recover civil penalties ordinarily "assessed and collected by the Labor and Workforce Development Agency . . ." for violations of the Labor Code. (§ 2699, subd. (a).) Van Steenhuyse alleged that UBS violated section 2802 by failing to indemnify financial advisors for business expenses, and violated section 204 with respect to the timely payment of commissions. In its answer, filed in April 2018, UBS asserted as an affirmative defense that Van Steenhuyse and other allegedly aggrieved individuals were "barred from litigating their claims, in whole or in part, in this court to the extent their claims are governed by the terms of applicable and binding arbitration agreements containing representative action waivers."

In February 2019, Andrew Hutcheson, who worked as a financial advisor at UBS until December 2017, filed his own complaint seeking penalties under PAGA for alleged violations of section 2802 and 204, and in March 2019 he filed a motion to intervene in Van Steenhuyse's lawsuit and replace Van Steenhuyse as the named plaintiff.

3

In August 2019, Van Steenhuyse, Hutcheson, and UBS stipulated to the filing of an amended complaint that added Hutcheson as the named plaintiff and removed Van Steenhuyse. The parties agreed that by stipulating to the filing of the amended complaint, UBS had not waived its right to move to compel arbitration. The parties disagreed, however, as to whether the limitations period for the PAGA claim in the amended complaint related back to the date of Van Steenhuyse's original PAGA notice, and they stipulated that if UBS did not move to compel arbitration, the issue of the limitations period was to be submitted for resolution to the trial court in a motion for summary adjudication based on stipulated facts, which would be filed by UBS.

UBS filed a motion for summary adjudication, pursuant to the stipulation, and eventually, this court ruled that the relation back doctrine applied. (*Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 938, 945.) The remittitur was filed by the clerk of the superior court on April 13, 2022.

C. *The Developing Law on Arbitration of PAGA Claims*

Shortly after the remittitur was filed, the United States Supreme Court issued its opinion in *Viking River*, which changed the law governing the arbitration of PAGA claims. Until *Viking River* was decided, the applicable law derived from *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). Under *Iskanian* and its progeny, PAGA claims were generally not subject to arbitration, but *Viking River* abrogated *Iskanian* in part. (*Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct at p. 1924].) In *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*), the California Supreme Court summarized the effect of *Viking River*:

"In *Iskanian* we held that a predispute categorical waiver of the right to bring a PAGA action is unenforceable (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-

4

383) – a rule that *Viking River* left undisturbed. (See *Viking River*, *supra*, 596 U.S. at pp. __-__, __-__ [142 S.Ct. at pp. 1922-1923, 1924-1925] [the FAA does not preempt this rule].) We explained that such waivers violate California public policy and Civil Code sections 1668 and 3513. [Citations.]

"In addition, *Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims). (*Iskanian*, *supra*, 59 Cal.4th at p. 384; see *Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1916].) We explained that 'whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* [i.e., non-individual] claims frustrates the PAGA's objectives.' (*Iskanian*, at p. 384; see *ibid.* ['[W]here . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law.'].) *Viking River* also left this rule intact. [Citations.]

"Following our decision in *Iskanian*, various courts held that employers may not require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings. [Citations.] *Viking River* held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.' (*Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1924].) . . . Requiring parties to adjudicate a PAGA action entirely in one proceeding, the high court said, 'compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into

5

giving up a right they enjoy under the FAA.' (*Viking* River, at p. __ [142 S.Ct. at p. 1924].) Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims if the agreement is covered by the FAA." (*Adolph, supra,* 14 Cal.5th at pp. 1117-1119.)

D. *UBS Moves to Compel Arbitration*

On June 27, 2022, just 12 days after the United States Supreme Court's opinion in *Viking River* was issued, UBS filed a motion to compel arbitration of Hutcheson's PAGA claims seeking to recover civil penalties for Labor Code violations committed against him (individual claims) and to dismiss his claims seeking penalties for violations committed against others (non-individual claims).

UBS argued that in the wake of *Viking River*, Hutcheson's individual PAGA claims could be compelled to arbitration, and once that happened, his non-individual claims should be dismissed because he would lack statutory standing to maintain those claims in court. Anticipating that Hutcheson would contend that UBS had waived its right to compel arbitration, UBS argued it would have been futile to move to compel until after *Viking River* was decided, because until then such a motion would have been denied under *Iskanian*, which was abrogated in part by *Viking River*. (*Viking River, supra,* 596 U.S. at p. __ [142 S.Ct. at p. 1924].)

Hutcheson opposed the motion to compel arbitration on three alternative grounds: UBS waived any right to compel arbitration; under the plain language of his agreement with UBS, his PAGA claims were exempt from arbitration; and the arbitration agreement was unconscionable. He also argued that even if the trial court ordered arbitration of his individual claims, his non-individual claims should not be dismissed.

6

The trial court found that Hutcheson demonstrated that UBS waived its right to compel arbitration, and that UBS had not demonstrated that it was excused from filing such a motion because the motion would have been futile. Based on those findings, and without reaching Hutcheson's alternative arguments, the trial court denied UBS's motion. UBS timely appealed.[3]

## DISCUSSION

### A. *Compelling Arbitration*

In *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63 (*Barrera*), we summarized the legal principles that govern attempts to compel arbitration:

"The governing law is both federal and state in character. We begin with federal law." (*Barrera, supra*, 95 Cal.App.5th at p. 75.)

Because "arbitration is a matter of contract, the FAA . . . applies if it is so stated in the agreement." (*Barrera, supra*, 95 Cal.App.5th at p. 76.) The agreement here provides that the FAA controls. "Under the FAA, there is a strong policy favoring arbitration. [Citations.] 'The overarching purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms . . . .' [Citation.] Therefore, '[a]rbitration is a matter of consent . . . .' [Citations.] [¶] ' "Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements

---

[3] With his respondent's brief on appeal, Hutcheson submitted an unopposed request that we take judicial notice of documents related to the *Viking River* case, which Hutcheson argues "demonstrate arguments that . . . [UBS] *could have made* in support of a time[ly]-filed motion to compel arbitration, which arguments would have been successful (at least in part) as evidenced by the *Viking River* decision." We took the request under submission for decision with the merits, and now deny it on the grounds that the material is not relevant to our resolution of the appeal.

7

according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute." ' [Citations.]" (*Ibid.*)

" ' "General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . "The words of a contract are to be understood in their ordinary and popular sense." ' [Citation.] Furthermore, ' "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." [Citation.]' " [Citation.]' [Citation.] Also, ambiguities or doubts about the scope of an arbitration agreement must be resolved in favor of arbitration. [Citations.]" (*Barrera*, *supra*, 95 Cal.App.5th at p. 76.)

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration any defense, such as unconscionability and waiver." (*Barrera*, *supra*, 95 Cal.App.5th at p. 77.)

B.     *Waiver*

1.     *Applicable Law and Standard of Review*

Because the FAA applies to the arbitration agreement here, the question whether UBS has waived the right to arbitration is a matter of federal law, rather than state law. (*Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.)

"Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.' " (*Martin v. Yasuda* (9th Cir. 2016) 829 F.3d 1118, 1124 (*Martin*).) To satisfy this burden, Hutcheson " 'must demonstrate (1) knowledge of an existing right to compel arbitration; [and] (2) acts inconsistent with that existing right.' " (*Ibid.*; see

8

*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 419 ["prejudice is not a condition of finding that a party, by litigating too long, waived its right to . . . compel arbitration under the FAA"].)

Ordinarily, the determination of waiver is a question of fact, and we affirm the trial court's finding if it is supported by substantial evidence. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.) But where " 'the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' " (*Ibid.*)

2.  *Analysis*

The parties disagree as to the standard of review that applies to trial court's waiver ruling, with UBS arguing for de novo review, and Hutcheson arguing that we should review for substantial evidence. We conclude that this is a case where the evidence is not in conflict, and the record establishes lack of waiver as a matter of law.

Hutcheson argues there is substantial evidence that UBS knew of its right to compel arbitration by April 2018, as shown by its assertion of the arbitration agreement as an affirmative defense. Hutcheson further argues that there is evidence that UBS acted inconsistently with its alleged right to arbitrate: UBS delayed for years before moving to compel arbitration, and litigated the case extensively in court, as reflected in its removing Van Steenhuyse's case to federal court and opposing remand, serving discovery on Van Steenhuyse and responding to discovery propounded by Van Steenhuyse, and, after Hutcheson was substituted as plaintiff, moving for summary adjudication and challenging the resulting order.

UBS argues that as a matter of law, it cannot have had knowledge of an existing right to compel arbitration until *Viking River* was decided,

9

because, before that decision was issued, a motion to compel arbitration would have been rejected under *Iskanian*, which was then the governing law.

UBS has the stronger argument. *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281 (*Piplack*) is on point and we agree with its analysis, as we did in *Barrera*. (*Barrera, supra*, 95 Cal.App.5th at p. 77.) In *Piplack* the plaintiff sued the defendant under PAGA in 2019. (*Piplack, supra*, 88 Cal.App.5th at p. 1286.) "Initially, the case proceeded in relatively ordinary fashion, with the filing of answers, demurrers, amended complaints, and a discovery motion. However, in February 2022, defendant filed a motion to compel arbitration." (*Ibid.*) Defendant explained its delay in filing the motion by referring to the then-pending *Viking River* case, which defendant expected would "overturn or materially alter" the California Supreme Court's decision in *Iskanian*. (*Piplack* at p. 1286.) The trial court summarily denied the motion under *Iskanian*, and plaintiff appealed. (*Ibid.*) On appeal, plaintiff argued that defendant had waived its right to arbitrate by, among other things, delaying seeking arbitration and participating in litigation in the trial court. (*Id.* at p. 1289.)

The Court of Appeal resolved *Piplack* in favor of defendant as a matter of law, concluding that the case was analogous to *Iskanian*, which, among other things, considered whether the defendant had waived its right to compel arbitration and prevent certification of a class action by failing to pursue its arbitration rights until the United States Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333. (*Piplack, supra*, 88 Cal.App.5th at p. 1289, citing *Iskanian, supra*, 59 Cal.4th at pp. 374-378.) *Piplack* explains that "[t]he defendant in *Iskanian* initially filed a petition to compel arbitration at the outset of the case, then withdrew it after the California Supreme Court issued *Gentry* [*v. Superior Court* (2007)

10

42 Cal.4th 443 (*Gentry*)[4]]. (*Iskanian*, at p. 376.) But when the United States Supreme Court issued *Concepcion* and effectively invalidated *Gentry*, the defendant renewed its motion for arbitration, citing the change in the law. (*Iskanian*, at p. 376.) The California Supreme Court held this delay, and the cost of related intervening proceedings in the trial court, could not constitute waiver because the failure to file a 'futile' motion to compel arbitration was not an *unreasonable* delay. (*Id.* at pp. 376-377.)" (*Piplack, supra*, 88 Cal.App.5th at p. 1289.)

The court in *Piplack* continued, "Similarly, in the present case, defendant raised its right to arbitrate as soon as it had any chance of success." (*Piplack, supra*, 88 Cal.App.5th at p. 1289.) "If anything, defendant moved *too* quickly by seeking to compel arbitration before the United States Supreme Court could decide *Viking*. In the absence of *Viking*, the trial court had no choice but to deny defendant's motion, as *Iskanian* remained good law and prohibited arbitration of any PAGA claim." (*Id.* at p. 1289, fn. 5.)

Here, as in *Piplack*, UBS litigated the case in court before moving to compel arbitration. The defendant in *Piplack* moved to compel arbitration after the United States Supreme Court granted certiorari in *Viking River*, while UBS moved to compel arbitration almost immediately after the decision in *Viking River* was issued, which is "as soon as it had any chance of success." (*Piplack, supra*, 88 Cal.App.5th at p. 1289.) If UBS had made the motion earlier, it would have been denied under the then-existing law, so filing the motion would have been futile. In those circumstances, UBS could not have

---

[4] In *Gentry*, the California Supreme Court held that in certain circumstances, class arbitration waivers in employment contracts were unenforceable as contrary to California public policy. (*Gentry, supra*, 42 Cal.4th at p. 457.)

had "knowledge of an existing right to compel arbitration." (*Martin, supra,* 829 F.3d at p. 1124.)

We are not persuaded by Hutcheson's attempts to distinguish *Piplack.* Hutcheson contends that *Piplack* is inapposite because here, unlike in *Piplack,* the trial court made a finding of waiver, and that finding is supported by evidence in the record. But the trial court's findings of fact are irrelevant here because as a matter of law there is no waiver where it was futile to file a motion to compel arbitration before *Viking River* was decided, because the motion would have had to be denied under governing law. (*Piplack, supra,* 88 Cal.App.5th at p. 1289.) Hutcheson also contends that *Piplack* is distinguishable because the defendant there "engaged in significantly less litigation activity than UBS." But, as *Piplack* explained, "[t]he fact that defendant vigorously defended itself in the trial court makes no difference" to the waiver analysis. (*Ibid.*) The relevant question is whether there was any unreasonable delay, and as a matter of law, the failure by a defendant to file a futile motion to compel arbitration is not unreasonable delay and cannot constitute waiver. (*Ibid.*)

We conclude that UBS did not waive its right to compel arbitration.

C.   *Hutcheson's Other Grounds for Opposing the Motion to Compel Arbitration*

In opposing UBS's motion to compel arbitration in the trial court, Hutcheson argued not only that UBS had waived its right to compel arbitration, but also argued that even after *Viking River* his PAGA claim was exempt from arbitration under the terms of the arbitration agreement and that the arbitration provisions in his agreement with UBS are unconscionable. The trial court did not decide the latter two issues, and Hutcheson argues that we should affirm the trial court's ruling on those grounds even if we conclude that there was no waiver.

12

1.    *PAGA Claims as Exempt from Arbitration*

The agreement between Hutcheson and UBS does not mention PAGA, but because PAGA claims are made under a state law that governs compensation they are "Covered Claims" for purposes of the agreement (as defined in paragraph 6.b), and as such are subject to resolution by binding arbitration under paragraph 6.a of the agreement absent some contractual exception or overriding legal rule.

Section 6.d of the agreement provides that, "to the maximum extent permitted by applicable law," Covered Claims may not be brought on a "class action basis, collective action basis, or representative action basis" in court or in arbitration.  In 2016, when Hutcheson signed his agreement, the applicable law was set forth in *Iskanian*:  a PAGA suit was a "representative action" in which the plaintiff sues " 'as the proxy or agent of the state's labor law enforcement agencies' " and " 'represents the same legal right and interest as state labor law enforcement agencies.' " (*Iskanian*, *supra*, 59 Cal.4th at p. 380.)  And under *Iskanian* PAGA claims could not be waived (*id.* at p. 383) and individual PAGA claims could not be bifurcated from non-individual PAGA claims.  (*Adolph*, *supra*, 14 Cal.5th at p. 1118; see *Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1916] [recognizing that all "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State," and distinguishing " 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees"].)

Thus, under applicable law at the time Hutcheson signed the agreement, the representative action waiver in paragraph 6.d was invalid

with respect to Hutcheson's PAGA claim. The agreement provided that "in the event any of the Waivers set forth in Paragraph 6.d are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in court," and further provided that "[i]nsofar as any Covered Claim is permitted to proceed on a class, collective, or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration." The result was that, at least until *Viking River*, the agreement between UBS and Hutcheson required Hutcheson's PAGA claim to proceed in court.[5]

After *Viking River*, however, "a PAGA claim can be divided into an ' "individual" ' portion involving 'claims based on code violations suffered by the plaintiff' and a ' "representative" ' portion 'arising out of events involving other employees[.]' " (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 236.) An individual claim is arbitrable (*Piplack*, *supra*, 88 Cal.App.5th at p. 1288), and because we resolve any doubts about the scope of an arbitration agreement in favor of arbitration (*Barrera*, *supra*, 95 Cal.App.5th at p. 76.), under paragraphs 6.a and 6.b of the agreement between Hutcheson and UBS,

_____

[5] UBS argues that the provision that a Covered Claim proceed in court "in the event any of the Waivers set forth in Paragraph 6.d are determined to be invalid" is irrelevant, arguing that because paragraph 6.d prohibited representative actions only "to the maximum extent permitted by applicable law," there was never any invalid waiver of any Covered Claim. Under that interpretation of paragraph 6.d, however, no waiver could ever be invalid and the contractual language providing that Covered Claims for which waivers are invalid must proceed in court would be superfluous, as would the language in paragraph 6.d, which recognizes that there may be disputes as to the "validity" of the waivers, which must be decided by a court. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 [we "avoid interpretations that render any portion [of a contract] superfluous, void or inexplicable"].)

14

the individual PAGA claim is a Covered Claim to be resolved by arbitration. We must read Hutcheson's waiver of Covered Claims brought on a "representative action" basis as applying only to his non-individual PAGA claim, which still cannot be waived. (*Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1925].) Because the waiver is invalid as to the non-individual PAGA claim, the agreement requires that the non-individual claim "shall proceed in court," even though the individual claim is subject to arbitration. The differential treatment of the individual and non-individual (or "representative") PAGA claims is further supported by language in the agreement providing that "[*i*]*nsofar as* any Covered Claim is permitted to proceed on a . . . representative action basis*,* it may do so only in a court of competent jurisdiction and not in arbitration." (Italics added.)

In sum, we are not persuaded by Hutcheson's argument that his PAGA claims are exempt from arbitration under his agreement with UBS, at least insofar as his individual PAGA claim is concerned, and therefore we will not affirm the trial court's ruling on this alternative ground.

2.    *Unconscionability*

We turn now to the issue of unconscionability, another argument raised by Hutcheson in opposing the motion to compel arbitration.

a.    *Applicable Law and Standard of Review*

The relevant legal principles have been summarized by the California Supreme Court in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*OTO*):

"The general principles of unconscionability are well established.  A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive

15

element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.]

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all the relevant circumstances, that a court should withhold enforcement.' [Citation.]

"The burden of proving unconscionability rests upon the party asserting it." (*OTO*, *supra*, 8 Cal.5th at pp. 125-126.)

Unconscionability is ultimately a question of law. (Civ. Code, § 1670.5, subd. (a); *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851.) We may decide the issue of unconscionability in the first instance, because it comes before us on uncontested facts. (*Barrera*, *supra*, 95 Cal.App.5th at p. 86; *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1251.)

b.    *Analysis*

We begin by disposing of two preliminary issues.  First, even though the trial court did not address Hutcheson's unconscionability arguments, Hutcheson argues that under the doctrine of implied findings we must assume that the trial court made findings in his favor on the issue.  The argument is meritless.  The doctrine of implied findings instructs us to infer that the trial court "made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48.)  The trial court here made no decision as to unconscionability, and therefore no factual findings pertaining to unconscionability are necessary to its decision, so none are implied.

Second, citing *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445-446, UBS argues that the issue of unconscionability must be decided by an arbitrator because Hutcheson challenges the contract as a whole rather than the validity of the agreement to arbitrate.  We are not persuaded.[6]  The contract at issue between UBS and Hutcheson is entitled, "Deferred Cash Award Agreement," and it incorporates several paragraphs under the heading "Arbitration Agreement."  UBS quotes a passage from Hutcheson's opposition brief in the trial court in which Hutcheson claimed that "the agreement contains multiple unconscionable provisions," and asks us to conclude that from this statement Hutcheson was challenging the Deferred Cash Award Agreement as a whole.  But it is clear that in his brief Hutcheson was referring to the provisions in the "Arbitration Agreement,"

---

[6] UBS contends that Hutcheson fails to address the argument that unconscionability must be addressed by the arbitrator in the first instance.  UBS is incorrect:  although Hutcheson's discussion of the issue appears in a footnote, Hutcheson opposes UBS's argument with citations to the record and legal authority.

17

rather than the contract as a whole. For example, the first sentence in the section of his trial court brief addressing unconscionability is: "UBS's motion should also be denied for the independent reason that its *arbitration agreement* is unconscionable and therefore unenforceable." (Italics added.) And each of the provisions that Hutcheson challenged in the trial court is related to arbitration—which is not surprising, since the copies of his contract that were submitted to the trial court were redacted, and the provisions that pertained to issues other than arbitration were blocked out.[7]

We turn now to the merits of Hutcheson's claim of unconscionability, starting with procedural unconscionability. An analysis of procedural unconscionability " 'begins with an inquiry into whether the contract is one of adhesion,' " that is, a standardized contract, "generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' " (*OTO*, *supra*, 8 Cal.4th at p. 126.) The next inquiry is "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.] ' " '*Oppression* occurs where a contract involves a lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hiding within a prolix printed form.' " ' " (*Ibid.*) Courts have recognized that "[a]rbitration contracts imposed as a condition of employment are typically adhesive" (*ibid.*) and that is the case here. Hutcheson submitted a

---

[7] At oral argument, UBS argued for the first time that a delegation clause in the section of the arbitration agreement pertaining to waivers of class claims requires that unconscionability be decided by the arbitrator rather than the court. This argument, which was not raised in the trial court or in UBS's appellate briefs, has been forfeited, and we do not address it. (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments raised for the first time at oral argument"].)

declaration stating that over the course of his employment with UBS, from 2011 until 2017, he signed a series of agreements containing similar arbitration provisions, and that all the agreements were presented to him by UBS on a take-it-or-leave-it-basis. Hutcheson further declared that the most recent agreement, which had been submitted to the trial court, was given to him on a standardized, pre-printed form; that he had no input into the content or wording of the agreement; and that he had no choice but to sign it if he wanted to receive amounts that constituted a significant portion of his promised compensation. Surprise is not an issue here, but Hutcheson's declaration shows a lack of negotiation and meaningful choice, and therefore we conclude that Hutcheson has demonstrated some degree of procedural unconscionability.[8] (See *id.* at p. 127 [recognizing economic pressure on employees to sign arbitration contracts as a condition of employment and as a condition of keeping employment].)

In analyzing substantive unconscionability we consider whether the contract at issue contains " 'terms that are "unreasonably favorable to the more powerful party," ' " including terms that " ' "contravene the public interest or public policy." ' " (*OTO, supra,* 8 Cal.5th at p. 130 [purpose of analysis is to ensure that contracts of adhesion do not impose " 'unfairly one-sided' " terms].) Hutcheson argues that five terms in the arbitration

---

[8] Contrary to assertions made by UBS at oral argument, this is not a case like *Barrera,* where we concluded that plaintiffs failed to demonstrate unconscionability. (*Barrera, supra,* 95 Cal.App.5th at p. 88.) In *Barrera,* the plaintiffs presented no evidence as to procedural unconscionability. (*Id.* at pp. 87-88.) Here, we have a declaration from Hutcheson; in contrast, in *Barrera,* plaintiffs' arguments on procedural unconscionability relied entirely on a declaration from the defendant's "human resources business partner." (*Ibid.*)

agreement are substantively unconscionable, and we consider them in turn, beginning with the most significant, which concerns limitations on discovery.

The arbitration agreement between Hutcheson and UBS requires that any arbitration be conducted according to FINRA's arbitration rules, which Hutcheson argues imposes an unconscionable limitation on discovery. In opposing the motion to compel arbitration, Hutcheson submitted a declaration from his attorney who stated that, based on more than 30 years of experience representing plaintiffs in wage-and-hour litigation, which included about 15 cases involving the compensation of securities broker-dealers, the FINRA rules do not allow Hutcheson to obtain sufficient discovery to prove his PAGA claim.[9] Hutcheson argues that FINRA's arbitration rules "generally do not permit interrogatories and allow depositions only under 'extraordinary circumstances.'" And Hutcheson argues that because the penalties at issue in his individual PAGA claim would be less than $50,000, it is "likely that FINRA's 'Simplified Arbitration' rules would apply," which "do not permit depositions or interrogatories under any circumstances," and under which "the only discovery a party may request is production of documents, and only during the 30 days following the

_____

[9] The attorney estimated that to prove the Labor Code violations at issue in Hutcheson's claim he would need to take at least five depositions, including depositions of persons most knowledgeable about UBS's "Business Builder" program (which allegedly violates section 2802 by causing a Financial Advisor to pay business expenses that should be borne by UBS), and the steps involved in calculating a Financial Advisor's commission wages, the timing of which are an issue in Hutcheson's section 204 claim. Hutcheson's attorney further stated that in addition, he would need to serve up to 30 interrogatories and multiple rounds of requests for production of documents.

defendant's answer."[10] According to the attorney, the requirement that any requests for production of documents be served within 30 days of UBS's answer would effectively allow Hutcheson only one round of requests. The attorney stated that even if FINRA's general arbitration rules applied, interrogatories would not be permitted, and depositions would be permitted only under the "very limited circumstances," including to preserve the testimony of a dying witness, to accommodate witnesses who cannot travel to the hearing, and in "extraordinary circumstances."

Relying on *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713 (*Baxter*) and *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476 (*De Leon*), Hutcheson argues that the discovery limitations that would apply to his claim are unconscionable because they deprive him of sufficient discovery to vindicate his statutory claims for PAGA penalties. Courts recognize that parties to an arbitration agreement may agree to limits on the discovery that would be available under the Code of Civil Procedure, but "an arbitration agreement must nonetheless ' "ensure minimum standards of fairness" so employees can vindicate their public rights.' " (*Baxter*, *supra*, 15 Cal.App.5th at p. 727.) In *Baxter* the arbitration agreement limited the parties to 10 interrogatories, with each subpart counting as a separate interrogatory, five written requests for documents, and depositions of two individuals for a total of no more than

_____

[10] According to the declaration from Hutcheson's attorney, the amount of penalties at stake does not affect the amount of discovery necessary to prove the alleged violations. The attorney stated that proof of Hutcheson's claims requires learning the steps involved in calculating a financial advisor's commission wages and how UBS's "Business Builder" program works; that information does not differ from employee to employee; and therefore the same basic discovery is required regardless of the number of employees or total amount of penalties.

eight hours, and authorized the arbitrator to increase those limits " 'for good and sufficient cause shown' in order 'to ensure that a party has a fair opportunity to present a case.' " (*Id.* at p. 727.) In *De Leon*, the arbitration agreement limited the parties to 20 interrogatories and three depositions per side, with no provision for any additional discovery except that the arbitrator could order more discovery " 'upon . . . a showing of substantial need' 'but only if the Arbitrator finds that such additional discovery is not overly burdensome and will not unduly delay conclusion of the arbitration.' " (*De Leon, supra*, 72 Cal.App.5th at p. 487.) The plaintiffs in *Baxter* and *De Leon,* like Hutcheson here, set forth facts tending to show that they would not be able to vindicate their statutory rights under the discovery limitations provided under the arbitration agreement, and in both cases, the discovery provisions were found to be substantively unconscionable. (*Baxter, supra*, 16 Cal.App.5th at pp. 729, 739; *De Leon, supra*, 72 Cal.App.5th at pp. 489-490.)

Notably, UBS did not file a declaration rebutting Hutcheson's attorney's opinions as to the scope of discovery necessary for Hutcheson to prove his PAGA claim, and how the FINRA rules would constrain it. UBS's sole response to Hutcheson's argument is to cite cases that stand for the general proposition, untethered to the facts of this case, that "California Courts have long found that FINRA (as the successor to NASD and NYSE) rules for arbitrating disputes between brokerage firms and their customers are not unconscionable." (*Johannsen v. Morgan Stanley Credit Corp.* (E.D.Cal. 2012) 2012 WL 90408 at p. *4; see also *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 945, 947 [discussing NASD limitations on arbitrations].) UBS does not explain why PAGA claims such as Hutcheson's should be considered similar to claims between brokerage firms and their customers, and does not attempt to distinguish Hutcheson's argument from

22

the successful arguments in *Baxter* and *De Leon*. In these circumstances, Hutcheson has demonstrated that the discovery limitations imposed on him by the FINRA arbitration rules are substantively unconscionable.[11] We cannot sever this unconscionable term: we cannot replace the agreement's provision that arbitration will proceed under FINRA's arbitration rules, or insert new discovery procedures into the agreement to replace the unconscionable FINRA discovery rules. (See *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 124-125 (*Armendariz*) [courts lack authority to reform contracts by adding terms].)

Hutcheson argues that four other provisions of the arbitration agreement are also substantively unconscionable, and we address them briefly.

Hutcheson argues that the representative action waiver is unconscionable because it violates the prohibition against waiving representative PAGA claims, which has been affirmed in *Viking River*. Hutcheson's argument on this point is unpersuasive, because he disregards the provisions in the agreement that authorize representative claims to be brought in court to the extent any waiver is invalid.

More persuasive is Hutcheson's argument that for certain Covered Claims, the agreement includes a one-way attorney-fee shifting provision in favor of UBS.[12] This provision is unconscionable and unenforceable (*Ajamian*

[11] We do not suggest that as a general matter the adoption of FINRA's rules for arbitration will constitute substantive unconscionability. We hold only that in the circumstances here, where Hutcheson has come forward with unrefuted evidence tending to show that he cannot prove his PAGA claim if he is subject to the applicable FINRA discovery limitations, Hutcheson has demonstrated substantive unconscionability.

[12] "Covered Claims," which are subject to arbitration, include all disputes between the employee (i.e., Hutcheson) and UBS, and therefore

23

*v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 779-800), but it is severable and if it were the only unconscionable provision, would not render the contract as a whole unenforceable. (*Armendariz*, *supra*, 24 Cal.4th at p. 127.)

Another provision that Hutcheson challenges as unconscionable states that the employee "consents to the issuance of a temporary restraining order or a preliminary injunction by any court or arbitration panel with jurisdiction over Employee to prohibit the breach of any provision of this Agreement . . . and, further, that the issue of temporary and preliminary injunctive relief may be decided by a court and not by an arbitration panel should [UBS] in its discretion elect to seek such relief." This provision reflects a lack of mutuality: the employee, but not UBS, consents to the issuance of a temporary restraining order or preliminary injunction to prohibit breach of the agreement, and UBS, but not the employee, has the right to seek temporary relief in court rather than in arbitration. UBS does not attempt to justify this one-sidedness, and we conclude that it constitutes unconscionability. (See *Armendariz*, *supra*, 24 Cal.4th at p. 117 ["it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as a plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities' "].)

Finally, Hutcheson challenges a provision stating that "[n]o arbitration award or decision will have any preclusive effect as to any issues or claims in

_____

include disputes concerning the non-solicitation and confidentiality-of-client-information provisions of Hutcheson's agreement with UBS. The agreement provides that if the employee breaches those provisions, the employee is liable to UBS for attorney fees it incurs to enforce the provisions.

any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration." UBS argues that the provision incorporates the well-accepted principle that "a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836-837.) Hutcheson argues that this provision is improper in the context of a PAGA action, but he does not explain how the case on which he relies, *Arias v. Superior Court* (2009) 46 Cal.4th 969, which concerned the preclusive effect of a trial court judgment in a PAGA case that included both individual and non-individual claims (*id.* at pp. 976, 981, 986), would apply in the context of the arbitration of an individual PAGA claim, such as this one. Hutcheson has not met his burden to demonstrate that this provision is unconscionable.

Nevertheless, Hutcheson has persuaded us that the arbitration agreement contains multiple unconscionable provisions. Even if some of them might be severed from the remaining provisions, as authorized by the arbitration agreement, we cannot rewrite the agreement to eliminate the unconscionable provision that would require Hutcheson's individual PAGA claim to proceed under the FINRA discovery rules. Further, the arbitration agreement includes more than one unconscionable provision, which would weigh against severing the provision even if it were possible. The existence of multiple unconscionable provisions supports the conclusion that the arbitration agreement here reflects "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.)

We conclude that Hutcheson has demonstrated some degree of procedural unconscionability and sufficient substantive unconscionability,

including an unconscionable limitation on discovery, to render his arbitration agreement unenforceable with respect to his PAGA claim. On that basis, we affirm the trial court's order.[13]

## DISPOSITION

The challenged order denying the motion to compel arbitration is affirmed. Hutcheson shall recover his costs on appeal.

---

[13] UBS argues that once Hutcheson's individual claim is compelled to arbitration, his non-individual claims should be dismissed for lack of standing. Because we affirm the trial court order denying the motion to compel we do not reach this issue. We note, however, that the California Supreme Court rejected an argument identical to UBS's in *Adolph, supra,* 14 Cal.5th 1104, holding that "where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court." (*Id.* at p. 1123.)

26

_____

Miller, J.

WE CONCUR:

_____

Stewart, P.J.

_____

Richman, J.

A166376, *Hutcheson v. UBS Financial Services, Inc.*