Filed 2/14/24  Rodriguez v. WWIL Personnel CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAMARI RODRIGUEZ,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WWIL PERSONNEL LLC, et al.,<br><br>     Defendants and Appellants. | A166048<br><br>(Alameda County<br>Super. Ct. No. 22CV006457) |

Plaintiff Damari Rodriguez was employed by defendants WWIL Personnel, LLC (WWIL) and SAS Automotive, Inc. (SAS) for approximately three weeks in September of 2021.  Rodriguez does not speak English, but before beginning work, she signed an arbitration agreement written in English.  Rodriguez brought suit against defendants alleging various violations of the Labor Code, and the trial court denied WWIL's motion to compel arbitration, finding that the arbitration agreement lacked mutual assent, and alternatively that the agreement was procedurally and substantively unconscionable and therefore unenforceable.  We reverse.

**BACKGROUND**

WWIL is a staffing agency that places temporary employees to work for its clients.  In late August or early September of 2021, WWIL placed

1

Rodriguez at defendant SAS where she worked from approximately September 2 to September 20, 2021 as a temporary full-time assembler in Fremont, California.

On February 3, 2022, Rodriguez filed suit against defendants in Alameda County Superior Court. The complaint alleged 10 causes of action, the first eight of which alleged various violations of the Labor Code, and the first nine of which were brought as a class action: (1) failure to provide required meal periods, (2) failure to provide required rest periods, (3) failure to pay overtime wages, (4) failure to pay minimum wages, (5) failure to pay all wages due to discharged and quitting employees, (6) failure to maintain required records, (7) failure to furnish accurate itemized wage statements, (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties, (9) violation of the Unfair Competition Law (UCL), and (10) a representative claim under the Private Attorneys General Act of 2004 (PAGA).

On April 14, WWIL moved to compel arbitration of Rodriguez's claims. The motion attached as Exhibit 1 a "Mutual Agreement to Arbitrate Claims" (arbitration agreement), electronically signed by Rodriguez on September 6, 2021. The motion also attached the declaration of Kervin Carreno, an "on-site coordinator" for WWIL, who testified that he recruited and placed Rodriguez at SAS in September 2021, and that Rodriguez executed the arbitration agreement along with other onboarding documents.

On June 22, Rodriguez filed opposition to the motion. The opposition attached her declaration, stating that she, along with at least 10 other job applicants, filled out a hard copy job application at SAS's Fremont premises before she started working. She testified that she "only speak[s] Spanish" and does "not speak, write, or read English," and that Carreno "knew that I

2

only spoke Spanish and he spoke to me in Spanish." She "believe[d]" that the job application that she filled out was in Spanish, and recalled that it asked for her contact information and employment history. She did not recall signing any other documents as part of her hiring process, electronically or otherwise. She also stated that she did not recognize the arbitration agreement, never signed it, and saw it for the first time in connection with WWIL's motion.

In support of its reply, WWIL submitted a second declaration from Carreno, in which he testified that he is fluent in Spanish, and that he met with Rodriguez to discuss her employment, a discussion that took place entirely in Spanish. He also stated that he was available at that meeting to answer any questions Rodriguez may have had, but she did not "express any questions, concerns, reservations, hesitations, or thoughts of any kind about the Arbitration Agreement or any onboarding documentation."

After a hearing, the trial court denied the motion by written order. The court first concluded that because the arbitration agreement was presented to Rodriguez in English, while WWIL knew that Rodriguez speaks only Spanish, WWIL had failed to establish that the parties knowingly and consensually entered into the agreement. The court found WWIL had established that Rodriguez signed the agreement, but that the agreement was procedurally unconscionable because it was presented to Rodriguez only in English. And the court found substantive unconscionability in the arbitration agreement's limitation of each party to three fact witness depositions. In denying the motion, the court acknowledged that it was "choos[ing] to frame the issue" as defendant's failure to prove the existence of a contract, while noting that "[a]lternatively, this could be framed as a contract that is unconscionable" because there was a high degree of

3

procedural unconscionability, and a low degree of substantive unconscionability.

WWIL filed a notice of appeal.

## DISCUSSION

### The Arbitration Agreement Does Not Lack Mutual Assent

WWIL first argues that the arbitration agreement does not lack mutual assent simply because Rodriguez signed it in English, despite speaking only Spanish. We agree.

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' " (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60, quoting *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) "[W]hen ruling on a petition to compel arbitration, the superior court may consider evidence on factual issues such as contract formation bearing on the threshold issue of arbitrability. . . . On appeal we must review the court's factual ruling on arbitrability under the substantial evidence test." (*City of Vista v. Sutro & Co.* (1997) 52 Cal.App.4th 401, 407.) " '[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record.' " (*Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 571, fn. 3.)

We considered a similar question in *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674 (*Ramos*). There, plaintiff purchased a used car from defendant, and signed a sales contract in English containing an arbitration agreement. (*Id.* at pp. 677–679.) After plaintiff brought suit and

4

defendant moved to compel arbitration, plaintiff submitted a declaration indicating that his native language was Spanish, that the negotiations for the car purchase had been conducted primarily in Spanish, and that he was provided with what was purportedly a Spanish copy of the sale contract he had signed in English, a copy that did not include the arbitration clause upon which the defendant relied.  (*Id*. at p. 679.)

We concluded that the contract lacked mutual assent, with the following explanation:

"It is undisputed that Ramos signed the English Contract and that this contract contains an arbitration agreement.  Ramos, however, argues that he was not aware that he was entering into an arbitration agreement because '[t]he words "arbitration" or "alternative dispute resolution" never came up during Plaintiff's discussions with the dealership, and Plaintiff never saw the arbitration clause because it was hidden in the English version of the RISC.'  Although there is no evidence to contradict these facts, typically these arguments would not be dispositive, and a person would be bound by the arbitration agreement he or she had signed.  ' "No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract[.]" ' (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.)  Further, ' "one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.  If he cannot read, he should have it read or explained to him. " ' (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 (*Randas*), quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987) § 120, p. 145.)  [¶] . . . [¶]

"Under the general contract principles just discussed, the fact that Ramos signed a contract in a language he may not have completely

5

understood would not bar enforcement of the arbitration agreement. If Ramos did not speak or understand English sufficiently to comprehend the English Contract, he should have had it read or explained to him. (See *Randas*, *supra*, 17 Cal.App.4th at p. 163; see also 1 Williston on Contracts (4th ed. 2007) § 4:19, pp. 588–590 ['one who is ignorant of the language in which a document is written, or who is illiterate, [who] executes a writing proposed as a contract under a mistake as to its contents . . . is bound'].) Here, however, Ramos is not attempting to avoid the arbitration agreement because of his limited understanding of the English language. Rather, he is relying on the fact that Pena's Motors provided him with what purported to be a Spanish translation of the English Contract he was being asked to sign, a Spanish translation which did *not* contain the arbitration agreement. [¶] . . . [¶]

"A contract is void for fraud in the execution where ' " 'the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all.' " ' (*Rosenthal* [*v. Great Western Financial Securities Corp.* (1996)] 14 Cal.4th 394, 415 [(*Rosenthal*)].) In this instance, ' " 'mutual assent is lacking, and [the contract] is *void*. In such a case it may be disregarded without the necessity of rescission.' " ' (*Ibid.*) In a fraud in the execution case, 'California law . . . requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner. One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had "reasonable opportunity to know of the character or essential terms of the proposed contract." ' (*Id.* at p. 423.) Thus, a 'party's

*unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract.' (*Ibid.*)" (*Ramos*, *supra*, 242 Cal.App.4th at pp. 686–689.)

We went on to conclude that Ramos's reliance on the Spanish translation lacking the arbitration clause was reasonable, that therefore mutual assent as to the arbitration agreement was lacking, and that it was void. (*Ramos*, *supra*, 242 Cal.App.4th at p. 690.)

Not only is *Ramos* distinguishable, much of its discussion supports WWIL here, which case is governed instead by the "general contract principles" discussed in *Ramos*, including that "the fact that [Rodriguez] signed a contract in a language [s]he may not have completely understood would not bar enforcement of the arbitration agreement. If [Rodriguez] did not speak or understand English sufficiently to comprehend the English Contract, [s]he should have had it read or explained to [her]." (*Ramos*, *supra*, 242 Cal.App.4th at p. 687.)

Rodriguez agrees that the question is whether she had a " ' "reasonable opportunity to know of the character or essential terms of the proposed contract." ' ([*Rosenthal, supra*, 14 Cal.4th] at p. 423). Thus, a 'party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract.' (*Ibid.*)" (*Ramos*, *supra*, 242 Cal.App.4th at pp. 688–689.) Critical in *Ramos* was the fact that the plaintiff was provided with what purported to be a Spanish language translation of the contract he had signed, which did *not* contain the

7

arbitration agreement found in the English version, and that his reliance on that Spanish translation was reasonable. (*Id*. at p. 690.) Here, by contrast, Rodriguez was not provided with a Spanish translation of the arbitration agreement—she simply signed the document in English despite that she did not "speak, write, or read English." Further, Carreno who spoke fluent Spanish, met with Rodriguez to discuss her employment and spoke with her in Spanish, and was "available to answer any questions [temporary employees] may have in either English or Spanish." And as he testified, "[a]t no point during that discussion, or at any time whatsoever, either verbally or in writing, did Ms. Rodriguez ever express any questions, concerns, reservations, hesitations, or thoughts of any kind about the Arbitration Agreement." In short, the evidence demonstrates that Rodriguez had a reasonable opportunity to learn the character or the essential terms of the arbitration agreement.

*Najarro v. Superior Court* (2021) 70 Cal.App.5th 871 (*Najarro*), on which Rodriguez relies, is also distinguishable. There, the court found fraud in the execution of an arbitration agreement as to two plaintiffs. (*Id*. at p. 888.) The first plaintiff "did not know how to read. She was asked, ' "do you want to work or not?" ' She replied, '[W]hat do these documents say? I don't know how to read,' to which she was told, 'It's okay, if you don't know how to read, then just sign them,' adding that it was 'nothing important.' " (*Id*. at p. 887.) The second plaintiff was presented with the document at a "glass window," where " '[d]efendants handed me another document to sign, which I believe to be the [a]rbitration [a]greement, stating, "sign here," without an opportunity to read what I was signing. Defendants just flipped to the signature page, put their hand over the document and had me sign, stating, "it's just a requirement to work for the company," and did not permit

me to read it.' " (*Ibid*.) Rodriguez, by contrast, does not allege that she was pressured to sign the arbitration agreement, that defendants prevented her from reading it, or that she was denied an opportunity to ask questions about its contents, including during her meeting with Carreno.

Relying on *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512 (*Caballero*), Rodriguez also argues that once WWIL was on notice that she did not speak English, the burden shifted to it to explain the contents of the arbitration agreement in Spanish. That reliance is misplaced. In *Caballero*, the plaintiff, who read and wrote only Spanish, signed a two-page arbitration agreement in English when his mother was admitted to defendant's health care facility. (*Id.* at p. 514.) The trial court denied the defendant's motion to compel arbitration. The Court of Appeal reversed, holding as follows:

"An exception to the general rule applies when a party was fraudulently induced to sign the contract. (*Ramos*, *supra*, 242 Cal.App.4th at p. 688 [contract void for fraud in the execution when party deceived as to nature of document]; *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 702 [dispute resolution form failed to warn employee he was agreeing to binding arbitration].) This exception is inapplicable here, because Caballero does not contend Premier Care defrauded him or prevented him from learning the contract's terms. He simply states that, to the best of his recollection, he was not presented with an Arbitration Agreement in Spanish or an Arbitration Agreement in English that was explained to him. He cites no authority suggesting it was Premier Care's initial burden to ascertain whether he could understand the English version. All Caballero had to do was tell Elstein or one of Premier Care's Spanish-speaking employees that he cannot read English and the burden would have shifted to Premier Care to

9

explain the contents of the Arbitration Agreement.  His decision to sign a document he could not read is not a basis for avoiding an arbitration agreement.  (See *Brookwood v. Bank of America*[, *supra*,] 45 Cal.App.4th [at p.] 1674 [' "A party cannot use his own lack of diligence to avoid an arbitration agreement" '].)"  (*Caballero, supra*, 69 Cal.App.5th at p. 519.)

We do not agree that the burden shifted to WWIL under *Caballero* to explain the contents of the arbitration agreement to Rodriguez.  Like the plaintiff in *Caballero*, Rodriguez does not contend that defendants defrauded her or prevented her from learning the arbitration agreement's terms.  And *Caballero* cited no authority for its statement that had the plaintiff told defendant that he could not read English, the burden would have shifted to defendant to explain the agreement's contents, and because *Caballero* enforced the arbitration agreement at issue there, that statement is pure dictum.  In sum, *Caballero* does not contravene the general contract law principles discussed in *Ramos*.  We conclude that Rodriguez has failed to demonstrate that the arbitration agreement lacked mutual assent.

**Rodriguez Has Not Demonstrated Unconscionability**

*The General Law*

California has a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*), quoting *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322 (*Ericksen*).)  "In this state, as under federal law [citation], doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration."  (*Ericksen, supra*, 35 Cal.3d at p. 323; see *Moncharsh, supra*, 3 Cal.4th at p. 9 [courts will " ' "indulge every intendment to give effect to such proceedings" ' "].)  "Thus, under both federal and California law,

arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2; see also Code Civ. Proc., § 1281.)" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 (*Armendariz*), fn. omitted.)

One of "such grounds" is the judicially created doctrine of unconscionability, a subject we have distilled as follows: "In the seminal case of *Armendariz* 24 Cal.4th 83, our Supreme Court addressed the validity of an arbitration agreement signed by employees, and held that the agreement was contrary to public policy and unlawful. In the course of doing so, the court discussed the 'judicially created' doctrine of unconscionability, which, the court held, has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. And the court went on, both procedural and substantive unconscionability must both be present in order for a court to refuse to enforce a contract under the doctrine of unconscionability. 'But they need not be present in the same degree . . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' (*Id.* at p. 114.)" (*Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 669.)

And in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*Kho*), our Supreme Court defined substantive unconscionability:

"Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided

11

as to "shock the conscience" ' " [citation] or "unfairly one-sided" [citation.]  All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' [Citation.]  Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter the fundamental legal duties. [Citation.]  They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations. [Citations.]  These examples are illustrative, not exhaustive." (*Kho, supra,* 8 Cal.5th at pp. 129–130.)

" 'On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' [Citation.]  Thus, unconscionability is a question of law we review de novo. [Citation.]  To the extent the trial court's determination on the issue turned on the resolution of contested facts, we would review the court's factual determinations for substantial evidence." (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82; see *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1235; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468–1469 (*Roman*).)

"[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236)—a burden Rodriguez has not met here.

12

As noted, both procedural and substantive unconscionability must be present to render the agreement unenforceable.  Here, the trial court found a high level of procedural unconscionability.  WWIL disputes that, arguing that the degree of procedural unconscionability is only "moderate."  Rodriguez disagrees.  We need not weigh in on the issue, for whatever the level of procedural unconscionability, Rodriguez has not demonstrated substantive unconscionability.

**Rodriguez Has Not Demonstrated Substantive Unconscionability**

Before the trial court, Rodriguez briefly argued that the agreement was substantively unconscionable and lacked mutuality because it was in English.  As noted, the trial court concluded that the agreement had a "low" level of substantive unconscionability based on its limitation of each party to three fact witness depositions.  On appeal, Rodriguez has abandoned her mutuality argument, and now argues that the agreement is substantively unconscionable because it limits each party to three depositions.  She also makes, however briefly—and belatedly—two arguments not made below:  the agreement is substantively unconscionable because its written notice provision is unfair, and because its class action waiver operates as a release of a claim for wages.[1]  We disagree on all counts.

---

[1] " ' "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal.  A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal." ' "  (*Westsiders Opposed to Overdevelopment v. City of Los Angeles* (2018) 27 Cal.App.5th 1079, 1091.)  "However, even where a legal argument was not raised in the trial court, we have discretion to consider it when the theory raised for the first time on appeal is a pure question of law applied to undisputed facts. [Citations.]"  (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436.)  Because Rodriguez's arguments are purely legal, and because the trial court found the discovery limitations

### *Discovery Limitations*

The discovery provision of the agreement provides as follows: "Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism."

"A limitation on discovery is an important way in which arbitration can provide a simplified and streamlined procedure for the resolution of disputes. (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 983 (*Dotson*); *Armendariz, supra,* 24 Cal.4th at p. 106, fn. 11.) At the same time, '[a]dequate discovery is indispensable for the vindication of statutory claims' (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 715 [(*Fitz*)]), and '[t]he denial of adequate discovery in arbitration proceedings leads to the de facto frustration of' statutory rights (*Armendariz, supra,* 24 Cal.4th at p. 104). In this context, 'adequate' does not mean 'unfettered.' (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184 (*Mercuro*).) In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional

---

substantively unconscionable even though Rodriguez did not make that argument in opposing the motion to compel arbitration, we will exercise our discretion to consider her arguments here.

discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims. (*Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1270 (*Poublon*).)" (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910–911 (*Davis*).)

As noted, the arbitration agreement provides for depositions of "three fact witnesses and any expert witness designated by another party," and gives each party the "right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law." Although the agreement does not expressly provide for interrogatories or requests for admission, it does provide that the arbitrator may grant any additional discovery where "the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism."

The amount of default discovery permitted here, and the standard for obtaining more, are even more permissive than those approved by the court in *Dotson*, *supra,* 181 Cal.App.4th 975. There, the arbitration agreement provided that " '[e]ach party shall have the right to take the deposition of one individual and any expert witness designated by another party' "; that " '[e]ach party also shall have the right to make requests for production of documents to any party' "; and that " '[a]dditional discovery may be had where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of need.' " (*Id.* at p. 982.) In finding these discovery limitations were not substantively unconscionable, *Dotson* first observed that the limitations were not "different in any meaningful respect" from the American Arbitration Association (AAA) rules, which give the arbitrator authority to limit discovery and " 'to order such discovery, by way of deposition, interrogatory,

15

document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of the arbitration.' " (*Id.* at p. 983; see *Roman, supra,* 172 Cal.App.4th at p. 1475 [rejecting argument that the AAA discovery rules are unconscionable because they give arbitrator discretion to deny depositions].) Relying on the fact that the agreement gave the arbitrator "broad discretion" to order further discovery without "a showing of 'substantial' or 'compelling' need or . . . any other limitation," the *Dotson* court concluded that the discovery limitations in that case did not render the arbitration agreement substantively unconscionable. (*Dotson, supra,* 181 Cal.App.4th at p. 984.)

Default discovery limitations similar to those here have been found not to be unconscionable in other cases, illustrated by these three:

*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398 (*Carmax*), where the court considered discovery limitations that provided for disclosure of relevant documents and limiting each party to 20 interrogatories and three depositions, with further discovery available upon a showing of "substantial need" if the arbitrator concluded allowing additional discovery. (*Id.* at pp. 404–406.)

*Mercuro, supra,* 96 Cal.App.4th 167, where the court found discovery limitations providing that " 'each side shall be limited to three depositions and an aggregate of 30 discovery requests of any kind, including sub-parts, except as mutually agreed to by the parties,' " with " 'a presumption against increasing the aggregate limit on requests,' " and a requirement that " 'additional discovery requests shall be granted only upon a showing of good cause' " not to be substantively unconscionable. (*Id.* at pp. 182–184.)

*Torrecillas v. Fitness International, LLC* (2020) 52 Cal.App.5th 485 (*Torrecillas*), where the agreement limited the parties to 30 interrogatories and five depositions, with further discovery available upon a showing of "substantial need." (*Id.* at pp. 496–498.)

Perhaps more importantly, Rodriguez has not demonstrated that the discovery limitations here will prevent her from adequately arbitrating her statutory claims.[2] As noted, she made no such showing below, because she did not even argue that the discovery limitations were substantively unconscionable to the trial court. She had not estimated any number of depositions, interrogatories, or other discovery that would be necessary to arbitrate her claims. (See *Mercuro, supra*, 96 Cal.App.4th at p. 183 ["without evidence showing how these [discovery limitations] are applied in practice, we are not prepared to say they would necessarily prevent Mercuro from vindicating his statutory rights"]; *Poublon, supra*, 846 F.3d at p. 1271 [rejecting substantive unconscionability argument where plaintiff "fails to make any showing that she would be unable to vindicate her rights under the standard provided in the agreement"].) The complaint itself —only 16 pages long—does not allege any specifics of Rodriguez's employment with defendants, although the declarations filed in connection with the motion to compel arbitration indicate she worked for defendants for some 19 days.

In support of her unconscionability argument, Rodriguez simply observes that hers is an employment case alleging various Labor Code

---

[2] The parties dispute whether the showing required must include evidence. (Compare *Davis, supra*, 53 Cal.App.5th at p. 912 [showing made based on appellate review of the record], with *Torrecillas, supra*, 52 Cal.App.5th at p. 497 [showing not made where plaintiff "argue[d] he requires certain documents and witnesses" in his brief but "submitted no evidence"].) We need not resolve this dispute because Rodriguez's showing is inadequate under either approach.

violations, and relies on the following observation from *Baxter v. Genworth North America Corporation* (2017) 16 Cal.App.5th 713 (*Baxter*): "Employment disputes are factually complex, and their outcomes 'are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice.' (*Fitz, supra,* 118 Cal.App.4th at p. 717.) Seemingly neutral limitations on discovery in employment disputes may be nonmutual in effect. ' "This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses." ' (*Id.* at p. 716.)" (*Baxter, supra*, 16 Cal.App.5th at p. 727.) But *Baxter* and *Fitz* were factually complex cases: *Baxter* was a wrongful termination action brought by an employee who had worked for the defendant for some 13 years; *Fitz* was brought by a 20-year employee against the defendant for age discrimination in violation of the Fair Employment and Housing Act. But beyond that, discovery limitations similar to those at issue here have been found not to be unconscionable in numerous employment cases. (See *Carmax, supra,* 224 Cal.App.4th at pp. 404–406; *Mercuro, supra,* 96 Cal.App.4th at pp. 182–184; and *Torrecillas, supra*, 52 Cal.App.5th at pp. 496–498.) The mere fact that this is an "employment dispute" does not mean that the default amount of discovery provided is inadequate.

Finally on this issue, we note that the cases relied on by Rodriguez are distinguishable.

In *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, the agreement limited each party to 20 interrogatories and three depositions. (*Id.* at p. 482.) The interrogatories could include " 'a request for all documents upon which the responding party relies in support of its answers to the interrogatories,' " but the agreement otherwise

18

contained no express provision for the production of relevant documents. (*Ibid*.) The arbitrator could order more discovery upon a showing of "substantial need," " 'but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration.' " (*Id*. at p. 487.) The plaintiff demonstrated that the default discovery was inadequate through a declaration from his counsel, who "estimated he would need to depose seven witnesses, three of whom are identified by name in the complaint," propound 50 interrogatories, and serve at least 70 requests for documents to support the complaint's 13 causes of action. (*Id*. at pp. 489–490.) Here, the default discovery provides for unlimited production of documents, further discovery can be ordered under a less stringent standard, and Rodriguez has made no such showing that the default discovery limitations are inadequate.

In *Baxter*, *supra*, 16 Cal.App.5th 713, the agreement allowed each party to submit up to 10 interrogatories to another party, propound five written requests for documents, and depose two individuals for a total of no more than eight hours. (*Id*. at p. 727.) Further discovery was available " 'for good and sufficient cause shown' " in order " 'to ensure that a party has a fair opportunity to present a case.' " (*Ibid*.) *Baxter* noted that the case was "factually complex," "involving an employee who had a 12–year employment history [with the defendant]," that "[r]elevant documents include those relating to family leave practices, evaluation policies, reorganization, prior complaints similar to Baxter's, communications concerning Baxter's discipline and termination, and Genworth's internal investigation," and that Baxter had "estimated she would need to depose an estimated six to 10 witnesses, six of whom are already identified in her complaint" and "would need to depose persons [defendant] would designate as most knowledgeable

19

on a variety of topics depending upon the defenses [defendant] may assert."
(*Id.* at pp. 727–729.)  The court also noted that the "good and sufficient cause"
standard was vague, and "presents a more stringent standard than [the]
simple 'showing of need' " approved in *Dotson*.  (*Baxter,* at p. 729.)  Here, by
contrast, the default discovery is more generous, the standard for additional
discovery less stringent, and critically, Rodriguez has made no comparable
showing that the default discovery is inadequate.

In *Fitz*, *supra*, 118 Cal.App.4th 702, the agreement limited discovery to
the sworn deposition statements of two individuals and any expert witnesses
expected to testify at the arbitration hearing, with no other discovery allowed
unless the arbitrator found "compelling need" for it.  (*Id.* at p. 716.)  The
agreement also required the arbitrator to limit discovery as specified in the
agreement "unless the parties can demonstrate that a fair hearing would be
*impossible* without additional discovery."  (*Ibid.*)  Fitz estimated she would
need to depose eight to 10 witnesses.  (*Ibid.*)  The *Fitz* court concluded that
"the burden the [agreement] imposes on the requesting party is so high and
the amount of discovery the policy permits by right is so low that employees
may find themselves in a position where not only are they unable to gain
access to enough information to prove their claims, but are left with such
scant discovery that they are unlikely to be able to demonstrate to the
arbitrator a compelling need for more discovery."  (*Id.* at pp. 717–718.)  Here
again, the amount of default discovery permitted is more generous, the
standard for obtaining more less stringent than "compelling need," and
Rodriguez has made no showing that the default limitations are inadequate.

In *Davis*, *supra*, 53 Cal.App.5th 897, the agreement permitted each
party to take a maximum of two depositions, and contained no express
provisions entitling the parties to propound interrogatories, requests for

20

admission, or demands for production of all relevant documents, with the arbitrator able to order additional discovery on a showing of "sufficient cause." (*Id.* at p. 911.) *Davis* observed that the plaintiff "had a 15-year work history" with the defendant, and had "offered facts tending to show that the alleged age and sex harassment 'dramatically increas[ed]' since 2010 and continued until his termination in 2018." (*Id.* at p. 912.) He alleged he had been "subjected to ageist slurs directed at him in the presence of multiple witnesses," and had "witness[ed] the sexual harassment and abuse of multiple women, including Red Bull employees." (*Ibid.*) *Davis* concluded that "[r]elevant documents would include, at minimum, those relating to Davis's work performance, discipline and termination, the reports of age and sex harassment by Davis and others, and the company's internal investigations. In short, Davis has demonstrated that he has a factually complex case involving numerous percipient witnesses, executives, and investigators, and that the arbitration agreement's default limitations on discovery are almost certainly inadequate to permit his fair pursuit of these claims." (*Id.* at pp. 912–913, fn. omitted.) Again, Rodriguez has made no such factual showing that the default discovery limitations are inadequate, especially for an employee who worked all of 19 days.

### *The Written Notice Provision*

The notice provision in the agreement provides: "The Company and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived." Rodriguez argues that the notice provision is substantively unconscionable.

21

Rodriguez provides no authority in support of this argument, but simply asserts that because the agreement was in English, she was unlikely to be able to provide the required notice. But she would have been required to file her claims within the limitations period even absent the arbitration agreement. Moreover, parties to an arbitration agreement may even agree to shorten the limitations period for claims without making the agreement unconscionable. (See *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1060 ["Parties may contract to a shortened limitations period so long as the limitation is reasonable"]; *Ellis v. U.S. Security Associates* (2014) 224 Cal.App.4th 1213, 1222–1223.) Rodriguez has failed to demonstrate that the notice provision is substantively unconscionable.

### *The Class Action Waiver*

The agreement contains a class action waiver, which provides: "To the maximum extent permitted by law, I hereby waive any right to bring on behalf of persons other than myself, or to otherwise participate with other persons in, any class or collective action." Rodriguez argues that this class action waiver is unconscionable because it is a pre-dispute waiver barred by Labor Code section 206.5, subdivision (a): "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee."

We do not understand how the class action waiver operates as a release of a claim for wages due, nor how defendants "required" Rodriguez to agree to it. (See *Pulli v. Pony International, LLC* (2012) 206 Cal.App.4th 1507, 1520 ["[Labor Code] section 206.5 prohibits an employer from obtaining a release

22

of a claim for wages under specified circumstances, and does not preclude a party from waiving its right to a jury trial by entering into an agreement containing an arbitration provision"].)  Indeed, the arbitration agreement expressly provides that "[a]rbitrable claims include, but are not limited to . . . claims for wages or other compensation due."  In any event, even assuming there is some conflict between the class action waiver and Labor Code section 206.5, the waiver by its express terms only operates "[t]o the maximum extent permitted by law."  (See *Torrecillas*, *supra*, 52 Cal.App.5th at p. 500 [by excluding arbitration "where the law specifically forbids [it]" agreement "steers clear" of potential violation of plaintiff's right to bring a PAGA claim].)  Rodriguez has not carried her burden to show that the class action waiver makes the arbitration agreement substantively unconscionable.

Finally, because we conclude that the arbitration agreement is not substantively unconscionable, we need not address the parties' arguments regarding procedural unconscionability.  (See *Kho*, *supra*, 8 Cal.5th at p. 125 [both procedural and substantive unconscionability must be shown to establish defense of unconscionability].)

## DISPOSITION

The order denying the motion to compel arbitration is reversed.  The case is remanded for further proceedings consistent with this opinion.  WWIL shall recover its costs on appeal.

 

 

_____

Richman, J.

We concur:

_____

Stewart, P. J.

_____

Miller, J.

*Rodriguez v. WWIL Personnel LLC* (A166048)